LITTLE ROCK RAILWAY & ELECTRIC COMPANY *v.* SLEDGE.

Opinion delivered April 21, 1913.

1.  STREET RAILROADS—RIGHT-OF-WAY IN STREETS—STREET CROSSINGS.—A street railway has a right-of-way over public streets traversed by its tracks superior to the rights of the general public to pass along or across such streets, and the relative rights of street railway

companies and pedestrians with reference to the use of that particular portion of the public street covered by the street railway tracks are precisely the same at street crossings as elsewhere. *Hot Springs Street Railway Co.* v. *Johnson,* 64 Ark. 420, approved. (Page 103.)

2.  STREET RAILROADS—RIGHTS OF STREET RAILROAD AND PEDESTRIAN AT PUBLIC STREET CROSSING.—It is error to instruct the jury that a pedestrian and a street car have equal rights on the tracks of the latter at a public street crossing, and that whichever reached the crossing first had the superior right to the use of that particular portion of the street.   (Page 104.)

3.  STREET RAILROADS—DUTY OF PEDESTRIANS AT CROSSINGS TO LOOK AND LISTEN—CONTRIBUTORY NEGLIGENCE.—It is the duty of a person about to cross a street railroad track to look and listen for approaching cars, at the time and place that will be reasonably effective to afford him information of the presence of an approaching car, and if he crosses heedlessly and is injured, he is guilty of contributory negligence precluding a recovery, notwithstanding negligence on the part of the company, unless the company wilfully or wantonly inflicts the injury, or fails to exercise ordinary care to avoid injuring him after discovering his peril.   (Page 108.)

4.  STREET RAILROADS—DUTY OF PEDESTRIAN TO STOP, LOOK AND LISTEN AT CROSSING.—A pedestrian is not required to stop, look and listen at a street railroad crossing except, as where the view is temporarily obstructed, the circumstances are such as to require stopping in order to properly look and listen.   (Page 108.)

5.  CONTRIBUTORY NEGLIGENCE—DECLARED AS A MATTER OF LAW, WHEN.— In an action for damages against a street railroad company for personal injuries, contributory negligence should be declared as a matter of law, when the evidence is undisputed, and men of ordinary intelligence could draw but one conclusion from it; but if the evidence is conflicting, or if from the undisputed evidence men of ordinary intelligence might reach different conclusions, then the issue of contributory negligence must be submitted to the jury.   (Page 110.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

### STATEMENT BY THE COURT.

On the night of April 12, 1910, appellee was walking along the west side of Center Street, to cross Fifth Street, in the city of Little Rock.   After he had crossed the sidewalk and gone a part of the way into the street, he saw a wagon coming from the west.   He stopped, and when

he saw that he could go ahead of it, proceeded to cross the north street car track running west on Fifth Street, and the wagon passed to the north of him. Appellee's attention was drawn to the wagon, and before the wagon left him, an automobile with a bright headlight on it, coming toward him from the west, sounded its gong, and he stepped back and stopped still for the automobile to pass. The automobile was running down the south track, and when appellee stepped back out of the way of the automobile, a street car, coming from the east on the north track, struck him, inflicting severe injuries upon his person.

Appellee's attention was directed to the noise of the automobile. He was watching the automobile after the wagon passed him. He didn't see the automobile until the wagon had passed him, and didn't see the street car until the instant he was struck. If he had seen the car he would have got out of the way. He didn't hear the car that struck him; it struck him before he saw it. "As he was going down he looked up and saw that it was a street car that struck him." The car had the usual lights inside and a headlight. The automobile also carried a bright headlight.

Appellee, before starting across the street, had just come from a bar room where he had taken "a sup of beer" with a friend, and was going home. He didn't look for cars, wagons or automobiles before leaving the sidewalk and until he had got into the street. He was proceeding rapidly across the street, and plunged into the dangerous situation, as shown by the approaching vehicles and cars, and from which situation he was unable to extricate himself, and received the injury of which he complains.

He alleged that his injuries were caused through the negligence of appellant's motorman in running its cars "at a high rate of speed without sounding the gong."

The appellant denied the allegations of the complaint, and set up the defense of contributory negligence.

In addition to the above facts, shown by the testi-

mony of the appellee himself, a witness in his behalf testified that he saw the plaintiff as he crossed the street, and that there was a wagon and an automobile moving toward Main Street and a street car going west on Fifth Street. That the plaintiff tried to cross in front of the wagon, and that the automobile made him jump back. At the time plaintiff started to cross the street the street car was east of him a distance of about sixty feet. If the automobile had not stopped plaintiff, and if he had not stepped back, he would have had time to get across the street. Plaintiff was dragged about forty feet after he was struck by the car.

The testimony of the motorman showed that he sounded the gong about fifty or sixty feet from Center Street as his car approached it going west. The motorman "struck his gong a time or two about fifty feet east of Center Street." The only time he rang it "was to kick it about fifty feet east of the east line of Center Street." The headlight on the car was burning all the time. There was no obstruction in the street to prevent him from seeing the man if he had been in the street. He could have seen him approach the track, but didn't see him. "He didn't come out there." The first time he saw the man was just as he ran into the car. The injury occurred about forty feet west of the west line of Center Street, according to the testimony of this witness, and he didn't see any wagon or any automobile coming from the west, going east, at the time or about the place when and where the accident occurred.

The plaintiff introduced an ordinance of the city which provides: "That every street railway company operating its cars in the streets or other public places of the city of Little Rock shall place a suitable bell or gong on each of such cars, and cause the same to be rung or sounded on each car approaching or passing another car or approaching or passing any street crossing or other regular crossing, such ringing or sounding to be commenced at a distance of not less than fifty feet from the

car or crossing approached, and continued until such car or crossing has been passed."

Among other prayers for instructions, granted at the instance of the appellee and over appellant's objections, were the following:

"1. You are instructed that where a street car crosses another street other than that along which it is moving, and a pedestrian is lawfully and in the exercise of due care using such other street for the purpose of crossing the street along which the street car is being operated, the street car and the pedestrian have equal rights to the use of the crossing. That is to say, in this case, if the plaintiff was going south on the west side of Center Street at and on the street crossing, and the street car was going west on Fifth Street, and was crossing Center Street, the one that was on that particular point of Fifth and Center streets which was a part of the street car track, and also that part of Center and Fifth streets, which constituted and was a crossing for a pedestrian travelling south on Center Street on the west side of Center Street, first, had the right to use that particular part of the street for lawful rights and in the exercise of due care to the exclusion of the other."

"3. You are instructed that it is for you to determine whether or not, under the facts and circumstances proved in this case, the plaintiff was, or was not, negligent in not looking to see whether a car was approaching."

The appellant duly excepted to the rulings of the court in granting these prayers.

Appellant, among others, presented the following prayers for instructions, which the court refused:

"1. You are instructed to find for the defendant."

"3. The court instructs you that plaintiff, according to his own testimony, was guilty of contributory negligence in attempting to cross defendant's track in front of an approaching car without looking or listening to see if a car was approaching dangerously near, and because of such negligence he will not be entitled to recover

a judgment in this case, unless you find from the evidence that defendant's motorman discovered his peril, after he got upon the track, in time to have stopped the car and avoided striking him, and yet failed to do so.''

"8. The street cars, of necessity, must have, and do have, a right-of-way on their tracks where they alone can travel, and this right is superior to that of pedestrians. This paramount or better right to the use of their tracks does not give them the right to exclude travellers, and these may move along or cross these tracks at any time where such travelling does not interfere with the progress of the cars; where there is conflict, the individual traveller must yield the right-of-way.

''If you find that plaintiff attempted to cross defendant's track without looking or listening, or using other prudent means to protect himself from injury, then he can not recover, unless you further find that defendant discovered plaintiff's peril in time to avoid the accident by the use of ordinary care, yet failed to do so.''

The court modified appellant's prayer for instruction No. 8 and gave the same as modified, as follows:

"8. The street cars, of necessity, must have, and do have, a right-of-way on their tracks, where they alone can travel, and this right is superior to that of pedestrians between intersecting streets. This paramount or better right to the use of their tracks between streets does not give them the right to exclude travellers, and these may move along or across their tracks at any time and place where such travelling does not interfere with the progress of the cars; where there is conflict, the individual traveler must yield the right-of-way.

''If you find that plaintiff attempted to cross defendant's tracks between intersecting streets, without looking or listening, or using other prudent means to protect himself from injury, then he can not recover, unless you further find that defendant discovered plaintiff's peril in time to avoid the accident by the use of ordinary care, yet failed to do so.''

The appellant duly objected and excepted to the re-

fusal of the court to grant its prayers numbered 1, 3 and 8 as requested, and to the giving of prayer No. 8 as modified.

Other prayers for instructions were given and refused, but the above are sufficient for the purposes of the opinion. The verdict and judgment were in favor of the appellee in the sum of $1,500, and the case is here on appeal.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. The court erred in declaring the law as to the relative rights and duties of the parties upon the highway. The first instruction given did not correctly state the law. 64 Ark. 420; 14 Gray 69; 7 Allen 573; 2 Sh. & Redf. on Negl., § 425a; 2 Nellis on St. Rys., § 387; 33 La. Ann. 154; 42 Atl. 699; 61 Pac. 40; 141 Fed. 599; 133 S. W. 449; 85 N. W. 1036; 42 Pac. 914; 35 *Id.* 920; 98 *Id.* 839; 77 N. W. 238; 65 Pac. 284; 61 S. E. 821; 79 S. W. 243; 63 N. W. 401; 84 S. W. 1154; 95 Pac. 602. The vital question is one of relative negligence, not relative rights. 61 S. E. 822, Syl. 9; 78 Ark. 129.

2. The court erred in its charge with respect to plaintiff's failure to look and listen. 45 N. Y. 191. Failure to look and listen is negligence. 40 So. 829; 42 Pac. 914; 35 *Id.* 920; 53 Atl. 369; 44 N. E. 927; 71 Pac. 265; 39 So. 433; 64 Atl. 254; 70 *Id.* 1050; 63 N. W. 401; 79 S. W. 464; 114 App. Div. 272; 32 Atl. 216; 48 Atl. 470; 58 S. W. 534; 101 N. W. 384; 107 Pac. 966; 52 Atl. 1090; 93 N. W. 489; 61 S. E. 821; 105 Pac. 458.

3. Defendant's peremptory instruction should have been given, as plaintiff was guilty of contributory negligence. 63 N. W. 401; 61 S. E. 821; 26 Atl. 419; 84 N. W. 853; 30 So. 747; 79 S. W. 464; 105 Pac. 460; 79 N. E. 335; 71 N. E. 298; 74 *Id.* 687; 61 N. W. 893; 70 N. E. 1029; 105 Pac. 458; 101 N. W. 384; 61 S. E. 821; 73 N. W. 412, and many others.

*Ben D. Brickhouse* and *Bradshaw, Rhoton & Helm,* for appellee.

1. The court did not err in giving the first instruc-

tion. At crossings, pedestrians and the street car company have equal rights, each using due care. 69 L. R. A. 300; 128 Pac. 460; 60 W. Va. 306; 9 A. & E. Ann. Cases 836; 100 Va. 1; 92 *Id.* 627; 96 N. Y. 487; 89 N. Y. Supp. 99; Thompson on Negl. 1399; Nellis on Street Rys., § 14; 84 S. W. 1154; 95 Pac. 600; 77 N. W. 238; 112 Pac. 90; 7 Thompson, Neg., § 1376; 105 Pac. 458; 78 Ark. 129.

2. It is negligence *per se* for a railway company to violate a valid city ordinance. 9 Am. & E. Ann. Cases 841. As to the exercise of due care and prudence by the company and the pedestrian, and the duty to look and listen, see 84 S. W. 1154; 95 Pac. 600; 85 N. W. 1036; 25 S. E. 273.

3. The motorman's neglect of duty was the proximate cause of the injury. 25 S. E. 273; 63 S. W. 549; 49 N. E. 857; 44 S. W. 1112; 84 *Id.* 170; 84 Fed. 93; 64 Atl. 978; 26 Am. St. 512; 49 S. W. 323.

4. Persons about to cross a street railway track are not required to stop, look and listen, unless there is some circumstance which would make it ordinarily prudent to do so. 147 Ind. 408; 62 Am. St. Rep. 421; 10 Misc. 541; 3 N. Y. Supp. 441; 32 *Id.* 153; 59 Minn. 45; 61 *Id.* 85; 14 Ind. App. 433; 98 Pac. 836; 65 Pac. 284; 97 Cal. 583; 57 Am. St. 726; 32 L. R. A. 276; 3 Elliott on Railroads, § § 1096 ci and cj.

WOOD, J., (after stating the facts). 1. In *Hot Springs St. Ry. Co.* v. *Johnson,* 64 Ark. 420, an instruction was given by the trial court which told the jury that "the rights of persons to pass along, over and across the streets where defendant company's tracks are laid are equal with those of said defendant." This court, passing upon the above declaration of law, said: "The tracks of street railways, including crossings, as well as every other portion of their tracks traversing the public streets of cities and towns, are used by the cars of such companies in common with the traveling public. No one is a trespasser for going upon their tracks. But, while this is true, the traveling public does not have equal rights with the railway company to the use of the tracks

for passing along or crossing over same. 'Equal' is not the word. The street cars, *ex necessitate,* must have, and do have, a right-of-way on their tracks, where they alone can travel, and this right is superior to that of ordinary vehicles and travellers. This paramount or better right to the use of their tracks does not give them the right to exclude travellers, and these may move along or across these tracks at any time and place where such travelling does not interfere with the progress of the cars. Where there is a conflict, the individual traveller must yield the right-of-way. This requirement of the law is to subserve the public convenience and accommodation. As was said by the Supreme Court of Pennsylvania, it would be unreasonable that a car load of passengers should be delayed by the unnecessary obstruction of the street railway track by every passing vehicle, horseman or footman. It is true that the travelling public and the street railway company has equal rights in using the public street. * * * But it is not correct to say that the right of the general public to use that particular portion of the public street covered by the street railway track is equal with that of the street railway company.''

The opinion in the above case does not disclose whether the injury to Johnson occurred at a street crossing, but this was wholly immaterial. The relative rights of street railway companies and pedestrians with reference to the use of that particular portion of the public street covered by the street railway tracks are precisely the same at crossings as elswhere.

The doctrine announced in *Railway* v. *Johnson,* above, is the outgrowth of a usage so universal and long continued as to ripen into law. Its object, as stated, is to subserve the public convenience. The reasons for the rule are: First, that street cars can only proceed along their tracks, whereas pedestrians, equestrians and travellers by vehicle may easily use other portions of the street, and may readily stop or change their course. Second, the street cars, on account of their weight, momentum and motive power, can not be so easily stopped or

controlled as travellers by other methods. Third, they are operated to afford the general public rapid transit, which would be greatly impeded unless, in cases of conflict, they have the right-of-way in the use of their tracks.

It is obvious, from all these considerations, that there can be no well grounded distinction between the relative rights of street railway companies and pedestrians and other travellers at crossings and between crossings as to the use, in case of conflict, of that portion of the street covered by the car tracks. Since the public convenience is to be subserved, there is all the more cogent reason for applying the rule announced at crossings, in cities like Little Rock, for at crossings the public travel is more likely to be congested unless the rule is rigidly observed.

The authorities almost unanimously hold that street railway companies have the paramount or preferential right-of-way over other travellers in the use of their tracks between street crossings. But there are adjudicated cases, and standard writers upon street railway law, that declare that street railways do not have the superior right-of-way on their tracks over other travellers at street crossings. Such authorities declare that at crossings neither has a superior right-of-way to the other. They say the car has a right to cross and must cross the street, and a vehicle or pedestrian has the right to cross and must cross the railway track; that their rights in this respect are equal, etc. Booth on Street Railways, § 304; Nellis on Street Railways, § 388; *O'Neal* v. *Dry Dock, E. B. & B. R. Co.,* 129 N. Y. 125, 29 N. E. 84, and other cases cited in note; White in Supplement Thompson on Negligence, volume 7, § 1376; 2 Thompson on Negligence, § 1392; Joyce on Electricity, § 589.

But, while it is true that each has the equal right to cross, it by no means follows, and it can not be true, that each has the equal right to pass over the tracks at the same time where there is a conjunction in their line of travel. Necessarily, one or the other would have to yield,

in case of conflict, or the public travel would be completely blocked.

We believe that the authorities which concede that street railway companies have the preferential right-of-way over their tracks between crossings, but which at the same time deny them this right at crossings, and which loosely declare that the rights-of-way over the railway track are equal at crossings, are all illogical and unsound. They ignore, or fail to discriminate between, the equal right to the use of the street as a public highway and the relative rights of each as to the use of that particular portion of the street occupied by the street car tracks. They overlook entirely the object of the rule of law stated in *Railway* v. *Johnson, supra,* as well as the reasons upon which it is based. The reason generally assigned by them why street railway companies have the preferential right-of-way between crossings is because pedestrians and other travellers may easily stop or turn aside from the railway track, whereas the cars can not do so. But this is only one reason for the preferential right between crossings. In assigning this as a reason, the other reasons, viz.: The difference in motive power, weight and momentum of the car, and the greater difficulty on that account in stopping and starting the same, are overlooked.

In the absence of statute or ordinance prohibiting it, travellers may cross the tracks of street railways anywhere between crossings as well as at the crossings, though at the intersection of streets the crossing by travellers is much more frequent. The reasons given for the preferential right-of-way between crossings all exist as well at crossings, and *a fortiori* the rule should apply there in order that the general public may not be discommoded.

Answering the contention that the rule of preferential right-of-way in favor of the street car does not apply at street crossings, the Supreme Court of Wisconsin, in *Stafford* v. *Chippewa, etc.,* 85 N. W. 1036, 1044, said: "That doctrine has been fully considered and rejected by

this and by most courts. If it were to prevail as a measure of relative rights of a person operating a street car and a traveller upon the street, then each might run a race with the other, and the one that arrived at the crossing first demand as a matter of right that his contestant give way for him to pass. Such a system would greatly interfere with the execution of the public purposes for which street railway franchises are granted." The court concludes the discussion with a clear announcement and strong approval of the doctrine we have stated.

The Superior Court of Delaware, in *Price* v. *Charles Warner Co.,* 42 Atl. 699, 703, holding that the doctrine applies to street crossings, says: "It would certainly be contrary to public policy and in violation of the rights of the railroad company to allow its tracks to be blocked at street crossings by the negligence of drivers of vehicles; but a correct understanding of the rights and duties of both parties will avoid any confusion upon the subject."

A careful consideration and analysis of the modern authorities only convices us that the doctrine as announced in *Railway* v. *Johnson, supra,* is an accurate statement of the law. See, *Denver City Tramway Co.* v. *Norton,* 141 Fed. 599, 604; *Austin Electric Ry. Co.* v. *Faust,* 133 S. W. 449; *Tesch* v. *Milwaukee, etc. Ry.,* 84 N. W. (Wis.) 823, 828; *McCarthy* v. *Consolidated Ry.,* 63 Atl. (Conn.) 725; see also *Nappli* v. *Seattle Ry.,* 112 Pac. 89; *Helber* v. *Spokane St. Ry.,* 61 Pac. 40, 41.

The first paragraph of instruction No. 1, given at appellee's request, was the converse of the doctrine announced in *Railway* v. *Johnson, supra.* And the second paragraph, in which the court undertook to explain the doctrine announced in the first, told the jury that if appellee *reached the crossing first,* he had the right to use that particular part of the street, in the exercise of due care, to the exclusion of the street railway company. Under the instruction, as thus explained, the jury were warranted in finding that if appellee reached the particular

point where the street car crossed the street in the line of his travel *first* he had the right to be there and to use that particular part of the street, if he was careful thereafter, regardless of whether or not he exercised ordinary care in arriving at that point. The law required appellee to exercise ordinary care in approaching the street crossing traversed by the street railway to ascertain whether or not a car was approaching with which he might come in collision if he proceeded in his regular course to cross the street car tracks. He could not cross the street car track at a crossing in front of a car that was approaching in its regular course without keeping his senses open to determine whether he would reach the track in front of the approaching car at the same time that the car would reach it. In other words, he had no right negligently to approach the street railway tracks at a public crossing, and by thus *getting there first,* claim that he had a preferential right-of-way. This follows as a necessary corollary to the doctrine above announced, declaring the superior right-of-way in the street railway company.

If a traveller, approaching a crossing, in the exercise of ordinary care, could see that a collision with an approaching car was inevitable or highly probable unless the motorman stopped the car, then it would be the duty of the traveller, under the above rule, to stop and let the car pass before endeavoring to cross, so as not to delay or impede its passage.

The instruction was misleading and highly prejudicial. Under it, no matter what may have been the negligence of the appellee in arriving at the particular spot where he was injured, if he got there first and exercised due care thereafter to avoid injury, he was entitled to recover, although if he had exercised ordinary care before arriving at the spot the injury would have been avoided.

The first paragraph of the instruction, as explained by the court in the second paragraph, was "in the teeth" of the law giving street railway companies where there is conflict the preferential right-of-way over their tracks at crossings and requiring pedestrians to exercise ordinary care in approaching crossings so as not to place them-

selves upon the street car tracks at the same time that the car moving along the tracks in the regular course would pass.

2. There is quite a contrariety of view among the authorities as to whether a failure to look and listen should be declared contributory negligence in any case as a matter of law, or whether it should be left in all cases as an evidentiary fact to be considered by the jury in passing upon the issue of contributory negligence. The authorities on the subject are collated in volume 3, pages 334-5-6, Am. & Eng. Ann. Cases, in a note to *Birmingham Railway, Light & Power Co.* v. *John S. Oldham* (141 Ala. 195); *Orlando S. Wood* v. *Omaha & Council Bluffs St. Ry. Co.* 22 L. R. A. (N. S.) 228. See also cases in briefs of counsel.

It would be of no practical value to review the cases, and would unnecessarily lengthen this opinion to do so.

The law is correctly stated in 36 Cyc. page 1537, as follows: "As a general rule it is the duty of a person about to cross a street railroad track to look and listen for approaching cars in time to avoid an accident, and, if he sees an approaching car in close proximity, to stop until it passes, although he need not exercise the same high degree of care in this respect as is required in crossing a steam railroad. He must look and listen at the time and place which will be reasonably effective to afford him information of the presence of an approaching car, and ordinarily must look and listen in both directions, and must continue to look and listen until he is safely across, and if he goes along heedlessly  *  *  *  and allows his attention to become so absorbed that he gives no heed to his danger by reason whereof he is injured, he is guilty of contributory negligence precluding a recovery, notwithstanding negligence on the part of the company, unless the company wilfully or wantonly inflicts the injury, or fails to exercise ordinary care to avoid injuring him after discovering his peril. But ordinarily a person is not required to stop to look and listen before crossing, except where the circumstances, as where the view is temporarily obstructed, are such as to require

stopping in order to properly look or listen. As a general rule, however, the duty to look and listen is not an absolute duty, and it is not negligence *per se* to fail to look and listen for approaching cars before crossing, but such failure is negligence only when the situation and surrounding circumstances are such that a person of ordinary prudence would have looked and listened.''

Joyce, in his work on Electric Law, in section 650, after reviewing many cases on the subject of the duty of travellers crossing electric railway tracks to look and listen, has this to say: ''At the beginning of this chapter, we have stated that the courts have not inclined to make the crossing of electric street railways subject to the same strict rules as are applied to crossing railroad tracks. In only two States are decisions to be found which favor a strict application of such rule, and in both of these States these decisions appear to be modified by later ones. In the majority of the States the rule seems to be, that it is the duty of a person about to cross tracks to look and listen and that a failure to do so is contributory negligence.''

And he concludes as follows: ''Ordinary care would generally require, it would seem, that a person should look both ways, or look and listen before crossing tracks, since we can conceive of but few cases where a reasonably prudent man would not exercise his powers of vision and of hearing before attempting to cross electric railway tracks; and in our opinion the degree of care defined in the different cases as necessary to be exercised varies but little, whether it be ordinary care, reasonable care, such care as a reasonably prudent man would exercise, or the requirement to look both ways, or to look and listen. So we think we are justified in stating the rule that it is the duty of the person about to cross the tracks of an electric street railway to look and listen for approaching cars, and that failure to do so is *prima facie* contributory negligence, not necessarily precluding recovery, but dependent as to its effect upon the circumstances of each

particular case." See also Booth, Street Railways, 311-12.

In determining whether, under the evidence, contributory negligence should be declared as a matter of law, the same rule obtains in cases of this kind, as in all other cases. If the evidence is undisputed, and men of ordinary intelligence could draw but one conclusion from it, then contributory negligence should be declared as a matter of law. But, if there is a conflict in the evidence, or if from the undisputed evidence men of ordinary intelligence might reach different conclusions, then the isue of contributory negligence must be submitted to the jury.

Applying these familiar principles to the facts of this record, a majority of the court are of the opinion that the court properly submitted the issue of contributory negligence to the jury upon instructions free from prejudicial error. The failure upon the part of appellant's motorman to sound his gong, as the ordinance required, in the opinion of the majority was sufficient, in connection with the other facts and circumstances in evidence to send the issue of contributory negligence to the jury, under proper instructions.

While prayer No. 3, granted at the instance of appellee, is not happily framed and can not be approved as a precedent, yet no specific objection was made to it, and in the opinion of the majority, when the prayer is taken in connection with prayers *4 and †7, given at the instance of appellant, there was no prejudicial error in granting it. (The writer, however, is of the opinion that

*4. If you find that plaintiff was guilty of contributory negligence in attempting to cross the track in front of an approaching car, without looking or listening for the car, or using such other means to protect himself from injury, as an ordinarily prudent man would have used under like circumstances, then he can not recover, unless you further find that the motorman became aware of his peril in time to have avoided injuring him by the use of ordinary care, yet failed to use such care.

†7. If you find from the evidence that the plaintiff was guilty of any negligence, which directly contributed to cause his injury, if any, then he can not recover in this action, unless you further find that the defendant became aware of his peril in time to have prevented his accident and failed to do so.

the third instruction furnished no correct guide on contributory negligence, and that appellee was guilty of contributory negligence as a matter of law in not looking and listening for approaching cars before attempting to cross the railway tracks.)

For the error in granting appellee's prayer for instruction No. 1 the judgment is reversed and the cause remanded for a new trial.

McCULLOCH, C. J., (dissenting). I agree, entirely, with the majority in holding that the court did not err in refusing to instruct the jury that the failure on the part of appellee to look and listen before he attempted to cross the street constituted negligence *per se* which barred his right to recover damages, and that the issue of contributory negligence was properly submitted to the jury upon instruction No. 3, which told the jury that it was a question to be determined from all the facts and circumstances proved in the case whether or not appellee was negligent in not looking to see whether a car was approaching.

I think, however, that the opinion, while clearly expressing what the court means to decide on this subject, is unfortunate in containing quotations from authorities which make somewhat ambiguous statements of the law. This is true as to the quotation from the Cyclopedia of Law, and also from Mr. Joyce. The last paragraph of the quotation from the Cyclopedia gives a clear statement of what I understand this court holds to be the law, and it should not be obscured by the other part of the quotation. That statement reads as follows:

"As a general rule, however, the duty to look and listen is not an absolute duty, and it is not negligence *per se* to fail to look and listen for approaching cars before crossing, but such failure is negligence only when the situation and surrounding circumstances are such that a person of ordinary prudence would have looked and listened."

The quotation from Mr. Joyce is in conflict with this and does not state the rule correctly, for a failure to look

and listen does not necessarily make a *prima facie* case of negligence. It is a question for the jury to determine, from all the facts and circumstances in the case, whether the traveller was exercising ordinary care for his safety when he attempted to cross the street.

I think this view is supported by the great weight of authority, and, to my mind, is consonant with sound reason and natural justice. The authorities cited in the briefs of counsel fully sustain this view. A few quotations from the decisions demonstrate the correctness of this rule.

The Supreme Court of Minnesota, in the case of *Shea* v. *Ry. Co.,* 50 Minn. 395, 52 N. W. 902, said:

"The degree of care required at the crossing of a highway and an ordinary steam railroad is not the test of care required in crossing the track of a street railroad on a public street. Hence the rule in the former case, that one approaching the crossing must look up and down the track before attempting to cross, is not necessarily applicable to the latter. The failure to do so, is not, as a matter of law, negligence."

The Connecticut court had this to say on the subject of the traveller's duty:

"If other vehicles threaten his safety, or if his attention is engrossed or distracted by the apparent imminence of danger from other sources, he must act with ordinary prudence with reference * * * to the group of circumstances that makes up the situation by which he is confronted. How a prudent man would act in the face of concurrent and distracting dangers must, in the nature of things, be a question of fact to be passed upon by the jury, and not a question of law upon which the court may order a nonsuit or direct a verdict." *Laufer* v. *Traction Co.,* 68 Conn. 475, 37 Atl. 379.

The Supreme Court of Maine, in the case of *Marden* v. *P. K. & Y. Street Railway,* 69 L. R. A. 300, said:

"While it may be found, as a matter of fact, in any case involving an accident by crossing in front of an electric car, that it was the duty of the person undertak-

ing to so cross to look and listen, it can not be laid down as a rule of law that a failure to do this does *per se* constitute negligence. That is, whether the failure of the party injured to look and listen, before undertaking to pass in front of an electric car, constitutes negligence, is a question of fact, while the failure to do so in attempting to pass in front of a steam car is a matter of law.''

Many other apt quotations could be made from the cases cited in the briefs which clearly state the same rule.

The difference between steam railroads and electric street railroads is so wide in manner of operation and the circumstances under which travellers cross the tracks, that it would be unjust to subject the traveller to the same test. We have laid down the rule in many cases, that, in crossing steam railroads, it is only in exceptional cases that travellers are not held to the absolute duty of looking and listening up and down the track for the approach of trains. The exceptional cases are illustrated in some of our decisions. *Tiffin* v. *St. Louis, Iron Mountain & Southern Ry. Co.,* 78 Ark. 55; *Scott* v. *St. Louis, Iron Mountain & Southern Ry. Co.,* 79 Ark. 137.

Exactly the reverse of that rule is true as to measuring the duty of travellers about to cross street railroads, and the rule is ordinarily that it is a question to be determined from the situation presented in each instance where the traveller was guilty of negligence in failing to look and listen, and it is only in exceptional cases, where the situation is shown to have been such that there was no excuse for failing to look, and where different minds could not reach different conclusions as to the conduct of the traveller, that it can be said as a matter of law that he was guilty of contributory negligence.

We have held that, in cases of injuries by automobiles and other vehicles, there was no absolute duty on the part of the pedestrian to look and listen before attempting to cross the street. *Millsaps* v. *Brogdon,* 97 Ark. 469; *Minor* v. *Mapes,* 102 Ark. 351, 144 S. W. 219.

Why is it not just to declare the same rule in cases against street railway companies? They occupy the pub-

lic streets in common with other vehicles and pedestrians without any superior rights except that others must get out of the way to let the cars pass. But when it comes to test the duty of a pedestrian with respect to danger from passing cars, the rule ought to be and is, I think, precisely the same as it is with respect to other dangers which infest the path of the traveller in crossing a crowded street.

I dissent from the conclusion reached by the majority that any of the instructions given by the court constituted prejudicial error which calls for a reversal. I think the case was fairly tried and the judgment ought to be affirmed.

I do not mean to say that the case of *Hot Springs Street Railway Co.* v. *Johnson,* 64 Ark. 420, is wrong or ought to be overruled, for the doctrine is correctly stated in that case that the rights of a traveller on the streets are not precisely equal with those of the street railway company. Their rights are equal and their duties reciprocal in many respects. They both use the street in common with others and have the right to do so. The duty rests upon each to exercise ordinary care to prevent a collision. It is only when their rights conflict, that is to say, when the pedestrian or other traveller is about to come in collision with the street car, that the traveller must turn aside and yield the right-of-way to the street car, for the latter can only pursue its way along the track. The instructions of the court on this subject are, therefore, not technically correct, but I do not think that the error had any bearing upon the verdict of the jury and did not constitute prejudicial error. There was no question involved in this case, from a practical standpoint, of conflicting rights between appellee and the street car. The question of the duty of one to turn aside and let the other pass did not arise. The questions in the case were, first, whether the motorman, on the one side, was guilty of negligence in failing to keep his car under control and give the signals and to prevent injuring appellee after discovering his perilous situation, and,

next, whether appellee himself failed to exercise ordinary care for his own safety. Appellee was not attempting to cross the street in spite of the presence of the car. He stepped upon the track without seeing the car, and the question is whether in doing so he was guilty of negligence. He had already crossed the track, and, in order to get out of the way of an approaching automobile, he stepped back on the car track. The jury might have found from the evidence that he was guilty of negligence in failing to look for the approaching street car and in stepping on the track, but it can not be said as a matter of law that under those circumstances he was guilty of negligence in doing so, and the evidence was sufficient to warrant the finding of the jury that he was not guilty of negligence. At any rate, there was no question in the case of the enforcement of equal rights, technically speaking, and the jury could not have been misled by the expression in the instructions telling the jury that their rights were equal.

We are here for the purpose of reviewing cases to discover prejudicial error, and a case should not be reversed for a technical error which did not result in any prejudice.

It is my opinion, as before stated, that this case was fairly tried and that the verdict of the jury being supported by sufficient evidence ought to stand.

Mr. Justice KIRBY concurs in these views.