PANKEY v. LITTLE ROCK RAILWAY & ELECTRIC COMPANY.

Opinion delivered March 15, 1915.

1. CITY ORDINANCES—SPEED OF VEHICLE—REGULATION—STREET RAILWAYS.—Section 914, Campbell & Stevenson's Digest of the City Or-

dinances of Little Rock, limiting the speed of certain horseless vehicles within the limits of said city, *held* not to apply to street railways.

2. STREET RAILWAYS—PUBLIC CROSSINGS—RINGING GONG—CITY ORDINANCE.—Section 1859, Campbell & Stevenson's Digest of the City Ordinances of Little Rock, requiring that street car companies place suitable bells or gongs on its cars and that the same be rung or sounded upon approaching or passing any street crossing or other regular crossing, applies to a place where one street comes into another, as well as where there is a complete crossing.

3. EVIDENCE—CITY ORDINANCE—ADMISSIBILITY—STREET RAILWAYS—QUESTION FOR JURY.—In an action for damages, where plaintiff was run into at a street crossing by a street car operated by defendant street railway company, an ordinance of the city, requiring that street cars sound their gongs upon approaching public crossings, is admissible in evidence, and it is a question for the jury to determine what relation the failure to comply with the ordinance had with the plaintiff's injury, and it is error to exclude the ordinance.

4. STREET RAILWAYS—RIGHT TO USE OF STREETS—RIGHTS OF OTHERS.—A street car company has the paramount or preferential right-of-way along the place occupied by its tracks, whenever the point arises that one must yield, either the company in the operation of its cars, or the traveler along or across the street; but the duties of all who use the streets are reciprocal, and the paramount right of the street railway company is subject to the reciprocal rights and duties of others, and no one user of the street has a right to pursue his course without anticipating the possibility of danger to others.

5. STREET RAILWAYS—INJURY TO PERSON ON TRACK—DUTY OF MOTORMAN.—The motorman of a street car has the right to assume that a pedestrian or other traveler on the car track, who is apprised of the approach of a car, will act under the impulse of self-preservation and get off the track in time to save himself from injury, yet the motorman is not entitled to indulge that presumption after he reaches the point of danger, but he must keep his car under control so that if it turns out that the traveler is insensible to his danger, or unable to extricate himself from danger, he can still give warning or stop the car in time to avoid injury.

6. STREET RAILWAYS—INJURY TO PERSON ON TRACK—DUTY TO GIVE SIGNAL AND STOP.—Plaintiff was injured, by being struck by a street car. The evidence was conflicting as to how the accident occurred. *Held,* it was reversible error to charge the jury that until he saw that the plaintiff could not get off the track, the motorman had a right to continue without checking the speed of his car, and that he owed the plaintiff no duty to check the car, until after an extra alarm was given, and he saw that plaintiff would be unable to get off the track.

7.  STREET RAILWAYS—USE OF ROAD BY TRAVELERS—PRESUMPTION—IN-
    JURY.—Where plaintiff was injured by being struck by a street car,
    *held* there is no presumption of negligence on plaintiff's part be-
    cause the plaintiff was driving on the left-hand side of the street, in
    the absence of proof of a traffic ordinance governing the use of
    streets by travelers.

8.  STREET RAILWAYS—INJURY TO PERSON ON TRACK—CONTRIBUTORY NEG-
    LIGENCE.—Plaintiff was injured by being struck by a street car.
    *Held*, the issue of plaintiff's contributory negligence was for the
    jury, and it was error to charge the jury that he assumed the risk,
    or was guilty of contributory negligence, if he undertook to cross
    the track in front of an approaching car.

Appeal from Pulaski Circuit Court, Second Division;
*Guy Fulk,* Judge; reversed.

*Manning, Emerson & Morris,* for appellant.

1.   It was error to exclude the city ordinances sought
to be introduced by the appellant.  It was in proof that
the car was running at the rate of twenty miles per hour,
and that the place of the injury was within the city limits.
The speed ordinance was admissible.  Running a vehicle
at a rate of speed in excess of that prohibited by an ordi-
nance or statute is negligence.

Section 1859 of the ordinances was clearly relevant
and material.  Appellant had testified that he was listen-
ing for the street car, and another witness had stated
that the gong had not been sounded when the car ap-
proached Prospect Avenue, nor had the motorman con-
tinued to sound the same until the crossing had been
passed.

2.   The court erred in refusing to instruct the jury
as requested by appellant that a person, in driving his
vehicle on the street railway track is not a trespasser.  70
Ark. 572; 69 Ark. 289-294.

Instruction 3, given at appellee's request, errs in
telling the jury that one operating a street car and seeing
another in danger upon the track has a right to presume
that the other would leave the track in time to avoid
being injured.  It is a question for the jury to decide
whether the person operating the car acted prudently or
negligently in assuming under the circumstances that the

party on the track would leave in time to avoid injury. 102 Ark. 417; 99 Ark. 422.

It was clearly erroneous to charge the jury that unless appellant was driving upon the right-hand side of the street, he was presumed to be guilty of negligence.

Instruction No. 9, given at appellee's request, errs (1) in saying that appellant assumed the risk, a doctrine which applies only in cases between master and servant, and (2) in saying that if he saw the car approaching and attempted to cross the track, he could not recover.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellee.

1.   The court's action in excluding the ordinances offered in evidence was justified, in that these ordinances were not applicable to the case.

While in a broad sense street cars would come within the language of the speed ordinance, yet it is plain from the difference in their construction and method of operation from automobiles, etc., that they were not intended to be included in the ordinance.

Section 1859 of the ordinances does not apply, because there was no crossing at the junction between Fairfax Avenue and Prospect Avenue, and for the further reason that the collision was not at the junction point between the two avenues, but, according to appellant's own testimony, the distance of a city block from it.

2.   The court correctly modified the first instruction requested by appellant. As asked, it embodied a statement of facts which, if found, constituted negligence, making no mention of the effect of finding contributory negligence. There was no contention that appellant was a trespasser, and for the court to have instructed the jury that he was not a trespasser would have been abstract and misleading. Instruction 3, given on behalf of the appellee, is a correct statement of the law as approved by this court.   64 Ark. 420; 108 Ark. 95-103.  There was no error in the instruction with reference to the duty of appellant to keep to the right side of the street, etc. 143 Pac. 458.   The ninth instruction, given for appellee,

was justified by the facts and circumstances shown in evidence.   80 Ark. 169; 88 Ark. 524-530.

McCULLOCH, C. J.   This is an action to recover damages from the street car company for personal injuries inflicted in the operation of a car.   The plaintiff, S. H. Pankey, was a mail carrier on December 24, 1909, when he received the injuries specified in the complaint, and claimed that the servants of the defendant, in operating a car, caused it to collide with the mail cart in which plaintiff was riding, and to overturn the cart and throw him out and injure him.   The defendant denied the allegations of negligence and the trial before the jury resulted in a verdict in favor of the defendant.

The plaintiff's narrative of the facts is as follows: He was driving west on Prospect Avenue, in the city of Little Rock, late in the afternoon—about 5 or 5:30—on December 24, 1909, and was standing on the step of the mail cart, where the mail carrier is accustomed to ride, when the street car struck the cart and overturned it. There is a double track of the street railway at that place. On the north side the space between the north rail and the curb is about three and one-half feet, and the space between the south rail and the south curb is about thirteen and three-fourths feet, thus giving space for other vehicles to travel only on the south side of the street car rails.   The car which inflicted the injury was coming from the west, and there was a down-grade around a curve.   The evidence shows that from the point where plaintiff was struck, an approaching car could be seen something less than a block.   Just around the curve, Fairfax Avenue runs into Prospect Avenue from the south side, but does not cross it.   The plaintiff testified that he stopped his cart at a mail box on the south side of the track to deliver a package at a residence across the avenue, and that after returning to his cart, he found that he had a registered package for a lady who lived a short distance farther west on the north side of the track.   He says that he got in his cart and started diagonally across the street to reach the residence of this lady, Mrs. Witherspoon, and when he had crossed the south rail of the

track his registered mail pouch slipped from the top of the pile, that his attention was diverted in trying to catch hold of the pouch and restore it to its place, and that in this way he slackened his hold on the lines and lost control, for the moment, over the movements of his horse. His mail was piled very high, so as to obstruct his view to some extent, and when he got the pouch replaced, he saw the street car coming rapidly about three-fourths of a block away, and he whipped up his horse and drew him over to the left in an attempt to get the horse and cart off of the track, but that before he could succeed in doing so, the car struck the cart and overturned it. He states that he whipped up his horse and drew him over to the left, and made outcries to attract the attention of the motorman. His testimony is that the car was running at a speed of about twenty miles an hour, and in this he is corroborated by other witnesses. His testimony, and that of other witnesses, tends to establish the fact that the gong was not sounded as the car approached Fairfax Avenue, and the evidence is sufficient to justify the conclusion that if the gong had been sounded, the plaintiff might have noted the approach of the car in time to have started about getting his horse and cart off of the track at an earlier moment.

On the other hand, the testimony adduced by the defendant tends to show that plaintiff got his horse and cart off of the track before the collision occurred, and then backed into the car, and that he stepped off of the cart before the collision. In other words, the testimony of the defendant completely exonerates its employees from the charge of negligence, and supports the verdict in favor of the defendant.

It is contended in the first place that the court erred in excluding from the consideration of the jury two ordinances of the city of Little Rock, one relating to the speed of vehicles propelled along the streets, and the other imposing a duty on the street car company of sounding the gong at street crossings. The ordinances excluded by the court read as follows:

"That no automobile, locomobile or horseless vehicle propelled by the use of electricity, gasoline or steam, by whatever name such vehicle may be known, whether used for purposes of pleasure or business, shall be moved or propelled along, over or upon any public street, avenue, boulevard or other public place in that part of the city bounded on the north by the Arkansas River, on the east by Commerce Street, on the south by Tenth Street, and on the west by the west side of Broadway, and also the city park and free bridge across the Arkansas River, at a rate of speed exceeding eight miles per hour and elsewhere in the city exceeding fifteen miles per hour. Any person violating any of the provisions of this ordinance shall, upon conviction, be subject to a fine of not less than five, nor more than twenty-five dollars (section 914 Campbell & Stevenson's Digest of the City Ordinances of Little Rock)."

"Sec. 1859.   Same—Bells or Gongs on Cars.—That every street railway company operating its cars in the streets or other public places of the city of Little Rock shall place a suitable bell or gong on each of such cars, and cause the same to be rung or sounded on each car approaching or passing another car, or approaching or passing any street crossing or other regular crossing, such ringing or sounding to be commenced at a distance of not less than fifty feet from the car or crossing approached, and continued until such car or crossing has been passed."

(1)   The circuit court ruled that the first of the ordinances copied above did not apply to street railways, and we are of the opinion that that conclusion is correct. The language of the ordinance does not leave the question entirely free from doubt, but street cars rather stand in a class to themselves, so far as concerns the mode of operation, and we think that the language used shows with reasonable certainty that the framers of the ordinance meant only to regulate the speed of other vehicles. It is true that the designating words "automobile, locomobile or horseless vehicle propelled by the use of electricity, gasoline or steam," are broad enough to include

street cars propelled by electricity, but the mode of operation of that kind of cars is entirely different from the other kind named, and we think that the city council did not mean by this ordinance to classify them with the other kinds of vehicles designated. Of course, it is a question of fact in each case for the jury to determine, notwithstanding the absence of an ordinance specifically regulating the speed, whether those operating the cars were guilty of negligence in running at excessive speed under given circumstances, but as this ordinance had no reference to street cars, the court was correct in excluding it from the consideration of the jury.

(2-3)    The other ordinance is clearly applicable, and we think the court erred in excluding it from the jury. It applies to street railway companies and provides that the bell or gong shall be sounded when the car is approaching or passing another car, or approaching or passing any street-crossing or other regular crossing. The contention on the part of the defendant is that the place where Fairfax Avenue runs into Prospect Avenue is not a street crossing within the meaning of the ordinance. That would be a very narrow construction of the language of the ordinance, for it is easy to see that the danger to be avoided is just about as great where one street runs into another as it is where there is a complete crossing. Vehicles coming in from another street necessarily cross from one side to the other, and danger is to be apprehended from approaching cars just as much as if the vehicles crossed the street entirely. We think the place where Fairfax Avenue comes into the other street is a crossing within the meaning of the ordinance, and that the court should have allowed the ordinance to go to the jury for consideration. The evidence tends to show that the ordinance was not complied with, and it is a question for the jury to determine what relation the failure to comply with the ordinance had with the plaintiff's injury, and it was error to exclude it. *Bain* v. *Fort Smith L. & T. Co.*, 116 Ark. 125, 172 S. W. 843. The evidence tends to show that the plaintiff was absorbed in the work of replacing the mail sack which had been jos-

tled off of the pile of mail, and that if the gong had been sounded, he would have taken notice of the approach of the car in time to get off of the track. His testimony shows that when he first became aware of the approach of the car, after it rounded the curve, he made every possible effort to rescue himself from the danger, but the car was coming at a high rate of speed and ran into the cart before he could drive off the track.

There are numerous assignments of error in regard to rulings of the court in giving and refusing instructions. Some of the adverse rulings of the court are not pressed in the argument, and we need not notice them. The first objection relates to a modification of plaintiff's first instruction, which submits the question of contributory negligence, and we think there was no error in that regard. Another instruction, which the court refused, told the jury that the plaintiff was not a trespasser in going on the track, and not necessarily negligent in doing so. We think there was no prejudicial error in refusing that instruction, in view of others which were given by the court, because in none of the instructions could the jury have understood that they were at liberty to regard the plaintiff as a trespasser on the track.

Objection was made to the following instruction, given at the instance of the defendant: "The street car had, and from the necessities of the case should have, a right-of-way upon that portion of the street upon which alone it could travel, paramount to that of other vehicles. If the motorman in charge of the car saw a person driving upon or near its track at a distance ahead sufficient to enable him to get out of the way before the car reaches him, and is not aware that he is insensible of the danger or unable to get out of the way, he has a right to rely upon human experience, and presume that the driver will act upon principles of common sense and the motive of self-preservation common to mankind in general, and will get out of the way, and to go on without checking the speed of his car until he sees that the driver of the car is not likely to get out of the way, when it would then become his duty to give extra alarm by bell or gong, and

if that is not heeded, and it becomes apparent that he will not get out of the way, then, as a last resort, to check the speed of his car or stop the car, if possible, in time to avoid the accident.''

(4)   That instruction is not a correct announcement of the law.   It is true that a street car company has the paramount or preferential right-of-way along the place occupied by its tracks whenever the point arises that one must yield, either the company in the operation of its cars, or the traveler along or across the street.   But, subject to that paramount right on the part of the car company under those circumstances, the duties of all who use the street are reciprocal and it is a mistake to say that one user of the street has a right to pursue his course without anticipating the possibility of danger to others. There is no disagreement on that score among the text-writers.   After laying down the rule as to the superior right of the street railroad, it is said: ''Subject to this qualification, the rights of the company and of the traveler on the street to use that part of the street occupied by the street railroad tracks are equal and reciprocal, a traveler on the street having as much right, if in the exercise of due care, to go across or along such part of the street, when not occupied by cars, as across or along any other part of the street, and is not a trespasser in doing so. * * * In the exercise of these reciprocal rights, the company and a traveler on the street are also under reciprocal duties, to the extent that the rights of each must be exercised with due regard to the rights of the other, and in such a careful and reasonable manner as not unreasonably to abridge or interfere with those rights, and so as to avoid injury, the one to avoid inflicting injury, the other to avoid being injured, proper consideration being given to the difference in motive power, and to the fact that the cars must run on a fixed track and rapidly acquire a greater momentum than another vehicle.''   36 Cyc. 1492, 1493.

This court has announced the same rule.   In *Little Rock Traction & Electric Co.* v. *Morrison,* 69 Ark. 289, it was said: ''Every one has a right to go on the streets

and on any part of them. In a sense, it is said that street cars have the right-of-way; but that is because of the weight, speed and momentum of the cars, the great number of persons carried on them, their necessity to run on schedule time, and their strict confinement to the appropriate track, and other like circumstances. Except to accommodate these peculiarities, the street cars have no real right-of-way over all travelers on the streets, and it can not therefore be said there are any trespassers. * * * The street car company owes a duty to all persons on the streets, perfectly commensurate with the relative situation between it and them. One of those duties is to exercise reasonable care not to injure, for the privileges of both are such as call forth such care at all times.''

(5) There is nothing in the case of *Hot Springs Street Ry. Co.* v. *Johnson,* 64 Ark. 420, nor in *Little Rock Ry. & Elec. Co.* v. *Sledge,* 108 Ark. 95, which militates against that rule. It is founded on reason and common justice, and in recognition of the nature of the occupancy of public streets by pedestrians, and travelers by any other mode, and street railway companies. The street is a public place which everybody has the right to make use of, and no one kind of traveler has the right to use it to the exclusion of others, or to make use of it in a way that will deny the same privilege to all others. The street car company has the right to occupy its own tracks, but every moment of such occupancy must be in recognition of the rights of others and in the exercise of ordinary care to prevent injury to others. A trial jury should, of course, take into consideration the fact that all persons are presumed, until the contrary appears, to be prompted by the feeling of self-preservation, and the motorman of a street car may, to some extent, assume that a traveler, who is aware of the approach of the car, will get off before it strikes him; but it will not do to say that until the motorman is apprised of the fact that the traveler is insensible to his danger that he is not bound to exercise any care to avoid inflicting an injury. That is the rule that is applied to the operation of trains moved by steam locomotives, but

the same rule can not be applied to street cars operated on the public streets. A railroad track is a place of constant danger, and train operatives have a right to assume that those who come upon the tracks are sensible of the danger of the place, and will take the ordinary precautions to avoid injury; but such is not the case with a street railway which occupies streets which are used in common with other travelers and which is not a place of constant danger. There are many cases which announce the rule stated in the instruction in this case, but they entirely lose sight of the distinction between the two characters of the railroads and the places which they occupy in the operation of trains, and are founded upon wrong principle. The sound rule is, we think, stated by the Supreme Court of Alabama in the case of *Schneider* v. *Mobile L. & R. R. Co.*, 146 Ala. 344, as follows: "Seeing a man driving along the track, the motorman may assume that he will turn aside and out of the way of the car; but he can not rest on the assumption so long as to allow his car to reach a point where it will be impossible for him to control his car or give warning in time to prevent injury to the man or vehicle." Stating the rule in other language, the motorman has the right to assume that a pedestrian or other traveler on the track who is apprised of the approach of a car will act under the impulse of self-preservation and get off in time to save himself from injury, yet the motorman is not entitled to indulge that presumption after he reaches the point of danger, but he must keep his car under control so that if, perchance, it turns out that the traveler is insensible to his danger, or be unable to extricate himself from danger, he can still give warning or stop the car in time to avoid injury.

The California Supreme Court said concerning the duty of the operatives of a street car company: "The standard by which ordinary care is to be measured is not absolute; and in the case of the operation of street cars, it must vary with circumstances attending their operation—the character of cars, the agency of propulsion, the locality in which they are operated,

whether in the country or in a city, whether over much-traveled or unfrequented streets, and the possibility or probability of danger attending their operation." *Henderson* v. *Los Angeles Traction Co.*, 150 Cal. 689.

The Supreme Court of Texas had this to say on the same subject: "It may be assumed, as matter of law, that it is the duty of a street railway company to know that the track in advance of its car is clear, and that it will be liable for any injury resulting from the want of this knowledge, unless its liability is defeated by the contributory negligence of the injured person, or unless it appears that the person injured went upon its track at a place so near the approaching car that the driver, by the exercise of care, could not avoid the injury after the person was seen or might have been seen. This involves the proposition that such a railway company is bound to use such diligence as will enable it to know whether the track in front of its car is clear, and if to this end the exercise of the highest degree of diligence is necessary, it must be used." *Galveston City Rd. Co.* v. *Hewitt*, 67 Tex. 473, 60 Am. Rep. 32.

(6)   Now, this instruction is also erroneous in saying that the motorman in acting upon this assumption may "go on without checking the speed of his car until he sees that the driver of the car is not likely to get out of the way, when it would then become his duty to give extra alarm by bell or gong, and if that is not heeded, and it becomes apparent that he will not get out of the way, then, as a last resort, to check the speed of his car or stop the car, if possible, in time to avoid the accident." According to the testimony of the plaintiff, the car came into full view about three-quarters of a block away, and was going at a speed of twenty miles an hour, yet under this instruction the jury might have concluded that the motorman was not guilty of negligence in continuing that rate of speed. There is a sharp conflict in the testimony. The plaintiff testified that as soon as he saw the car coming down grade around the curve, he commenced a frantic effort to attract the attention of the motorman and to get his horse and cart off the track, but failed to do so in

time to avoid the car, which was coming at a high rate of speed. On the other hand, the motorman testified that the plaintiff got off the track and backed his cart into the car. If the plaintiff's statement of the facts is true, there is no escape from the conclusion that the negligence of the motorman caused the injury; and on the other hand, if the statement of the motorman is true, there is no liability in the case, for the injury was brought about by the plaintiff's own act. It was therefore misleading to tell the jury that the motorman had a right, until he saw that the plaintiff couldn't get off of the track, to continue unchecked the speed of his car, and owed the plaintiff no duty until after extra alarm was given, he saw that plaintiff was not going to be able to get off the track. We think the instruction was erroneous and calls for a reversal of the judgment.

Instruction No. 5 was also objected to, and reads as follows: "You are instructed that it is the duty of the person driving a private vehicle to keep to the right of the street on which he is driving, but this does not prevent him from crossing the street at such times or places as it may be necessary for him to do. If you find from the evidence that plaintiff was driving his wagon west on the south track of the defendant company, and that he had ample room to have driven to the right and to have kept clear of the track on which the car would approach when coming east, or if you find that he could have driven on the south side of the street on that portion on which there are no car tracks, yet he failed to do either one, then the presumption of law is that he was guilty of negligence, and the burden of proof is upon him to explain his position on the south track, and to clear himself of the presumption of negligence."

(7)  The instruction was erroneous in saying that the fact that plaintiff was driving his wagon on the south track of the company raised a presumption of negligence against him. There is no proof of any traffic ordinance which compelled travelers to keep on the right-hand side of the road. It is an undisputed fact that the driveway is on the south side of the road, and that there is not

room for vehicles between the car track and the curb on the north side. Learned counsel for the defendant defend this instruction on what they term the ''law of the road,'' but we think there is no inflexible rule of action which the courts can lay down to control juries in determining what is and what is not negligence on the part of a traveler under such circumstances. It was a question of fact for the jury to determine, under all of the circumstances, whether or not plaintiff was guilty of negligence, and it was incorrect to tell the jury that there was a presumption of negligence because he was driving on the south track. That track was in the middle of the street, and plaintiff had a right to occupy that place so long as he was exercising such care as a man of ordinary prudence would have exercised; and it can not be said as a matter of law that he was guilty of any negligence in being there, or that there was any presumption of negligence raised against him because he was there.

(8) Another instruction objected to reads as follows: ''9. You are instructed that the street car company has a paramount right-of-way upon its tracks, and if the plaintiff saw or heard the car approaching, and yet undertook to cross the track in front of it, he assumed the risk of being struck by the car, and you will find for the defendant, unless you further find that the car could have been stopped in time to have avoided the accident after the motorman perceived the plaintiff's danger.'' That instruction is incorrect in stating that the plaintiff assumed the risk of being struck by the car merely because he undertook to cross the track in front of it. There is no question of assumed risk in the case, and can not be. If the plaintiff's own negligence contributed directly to his injury, then he can not recover; but that was a question for the jury, and it was improper to tell the jury that because he attempted to cross in front of an approaching car, that he assumed the risk or was guilty of contributory negligence. This instruction entirely ignored the duty of the operatives of the street car to exercise ordinary care to prevent injury to travelers, and only made the company liable for negligence after

discovering their perilous position. It excluded from the jury all consideration of negligence in failing to sound the gong or in failing to look for travelers on the track. In short, it excluded from the jury everything that would tend to place liability on the company except the fact of liability for discovered peril.

The judgment is therefore reversed, and the cause remanded for a new trial.