ARKANSAS POWER & LIGHT COMPANY *v.* CONNELLY.

Opinion delivered April 25, 1932.

*Rose, Hemingway, Cantrell & Loughborough* and *Elmer Schoggen,* for appellant.

*Caviness & George, Neil Bohlinger, Sam T. Poe, Tom Poe* and *Donald Poe,* for appellee.

McHANEY, J. E. C. Connelly, for himself and as father and next friend of his infant son, Harold Connelly, brought this action against appellant to recover damages for personal injuries sustained by said infant by being struck by a street car of appellant on West Eleventh Street in the city of Little Rock. A trial resulted in a verdict and judgment for himself in the sum of $1,500 and as next friend for the infant in the sum of $3,500.

Three general assignments of error are relied upon for a reversal of these judgments: 1, that the court erred in the admission of testimony; 2, in the instructions; and, 3, in refusing to direct a verdict for it at its request.

We discuss these assignments in the reverse order. At the conclusion of the testimony for appellees, and again at the conclusion of all the testimony, appellant requested a directed verdict in its favor on the ground that the evidence was insufficient to support a verdict against it, either for the infant or the father. The court refused these requests, and they are now pressed for our consideration. This assignment must be overruled if there is any substantial evidence to support the verdict, viewing it in the light most favorable to appellees. A brief statement of the evidence viewed in this light follows: On March 30, 1931, Mr. Connelly, a widower, with his twin children three years and nine months of age, a nurse and housekeeper, and a young lady, lived at the corner of West Eleventh and Washington streets in Little Rock, on the south side of West Eleventh. One of appel-

lant's double lines of street car tracks is on West Eleventh and occupies a large portion of said street which is not paved. On the north side of this street, between Peyton and Washington, there is a large ditch which has been covered with plank or bridges to afford ingress and egress to the property on the north side of the street, except for about 100 feet east of Washington, where the ditch is not covered. On the above date, Mr. Connelly left the home to go to town, and at that time the children were playing in the front yard with some neighbor children, all being in the immediate custody of the nurse of the latter children. Shortly thereafter said nurse took them all across the street (and, of course, across the car tracks) in a northeasterly direction to a sand pile in the front of a neighbor's yard, where they were playing. The Connelly nurse and housekeeper discovered their absence, saw them across the street, and called them home. They started home in obedience to the call, but one of appellant's street cars, traveling west, struck Harold, knocked him down, ran over his right foot and cut or mashed off three toes, part of a fourth toe and otherwise bruised and injured him. The car traveled a car length or more before stopping after striking the child. At that time of year the children at the sand pile could have been seen by the motorman on the street car for a considerable distance east, and the child in the street could have been seen for a block or more east of the place of injury. The child, in going home, went across the ditch on the plank covering, and was going in a southwesterly direction and traveled some distance in the street before reaching a danger point on or near the track and could have been seen by the motorman, if a proper lookout had been kept, in ample time to have avoided injury to him. An eyewitness to the accident says the motorman, as he came down the street, was looking to the south, and apparently talking to a passenger who was standing on the car. Failure of the motorman to keep a proper lookout was the ground of negligence alleged and relied on, and that he saw, or by the exercise of ordinary care could have seen,

the child in time to have averted the injury. We think the evidence sufficient to take the case to the jury, both as to negligence and the proximate cause of the injury. But appellant says the testimony of the eyewitness who says the motorman was looking to the south is demonstrably false, because she could not have seen what she says she saw. We think appellant is mistaken in this argument. She stopped her car at the corner of Washington and Eleventh and could have seen the incidents testified to. At any rate, her credibility was for the jury. There was therefore substantial evidence before the jury, and appellant must fail on this assignment. It is insisted, however, that Mr. Connelly cannot recover in his own right because of the contributory negligence of Mrs. Kirker, the nurse and housekeeper, who was his agent in the care and custody of the children, because she called them to come home when a street car·was approaching in plain view, and because she left them unattended in the front yard. This question was submitted to the jury under proper instructions, and it was a question for the jury under all the circumstances. We cannot say as a matter of law that she was negligent, as it is not certain that she saw the car.

Appellant also assigns error in the giving of instructions 1, 2 and 3 for appellee, in modifying and giving as modified appellant's No. 16, and in giving the second paragraph of appellee's No. 29.

Instruction No. 1 for appellees is as follows: ''Gentlemen of the jury, this is a suit brought by Harold Connelly, an infant, by his father and next friend, E. C. Connelly, and by E. C. Connelly in his individual capacity, against the Arkansas Power & Light Company. The suit is for damages which the plaintiffs allege they sustained by reason of the negligent injury of the infant plaintiff, Harold Connelly, by a street car in Little Rock, on March 30, 1931.'' It is said that this instruction tells the jury that this was a ''negligent injury,'' and had the effect of withdrawing from the jury the question of appellant's negligence, making it peremptory to find for appellees

in some amount. We do not think the instruction is open to this objection, but is a simple statement of the purpose of the lawsuit. It does not say that plaintiffs sustained a negligent injury, but that they "allege" they sustained damages by reason of the negligent injury to Harold. In other words, it is stated that plaintiffs seek to recover damages and allege that Harold received a negligent injury. This is not tantamount to saying that Harold did receive a negligent injury, but only that they allege such to be the fact.

We have examined carefully the arguments made against instructions 2 and 3 and do not find them open to the objections made. We do not set them out, as no useful purpose could be served thereby.

Instruction No. 16, as requested by appellant, is as follows: "You are instructed that street cars, from the necessity of the case, must have and do have the right-of-way on tracks where they alone can travel, and this right-of-way is superior to that of ordinary vehicles and travelers. This paramount or better right to the use of their tracks does not give them the right to exclude travelers who may move along or cross the tracks at any time and place where such traveling does not interfere with the progress of the street cars. But where there is a conflict between a street car and a traveler, the traveler must yield the right-of-way. This requirement of the law is to subserve the public convenience and accommodation, and it is your duty to bear these reciprocal rights in mind in determining the care required of the parties." The court gave said instruction, and, in connection therewith, added the following, at the request of appellees. "The rights of the plaintiff, Harold Connelly, and defendant street car company to use that part of the street occupied by the street railroad tracks are equal and reciprocal. The plaintiff, in walking on the path along or on the part of the street occupied by the street railroad track, had as much right, if in the exercise of ordinary care, to go along such part of the street, when not occupied by a street car, as he had to go along any other

part of the street, and plaintiff was not a trespasser in doing so. In the exercise of the reciprocal rights to use that portion of the street occupied by the street railroad tracks, the plaintiff and defendant company are also under reciprocal duties. The rights of each in using that portion of the street occupied by the street railroad tracks must be exercised with due regard to the rights of the other, and in such a careful and reasonable manner as not unreasonably to abridge or interfere with those rights, and so as to avoid injury, the one to avoid inflicting injury, the other to avoid being injured.''

It is argued that the modification given at the request of appellees is in conflict with that part of the instruction requested by appellant. We do not think so. When carefully analyzed, the instruction as a whole, including the modification, states the rule correctly as to the respective rights of the street car company and other travelers on the street over which the car tracks pass. The law is clearly stated by this court in *Hot Springs Street Railway Company* v. *Johnson,* 64 Ark. 420, 42 S. W. 833; *Little Rock Railway and Electric Co.* v. *Sledge,* 108 Ark. 95, 158 S. W. 1096 Ann. Cas. 1915B, 682; and *Pankey* v. *Little Rock Ry. & Elec. Co.,* 117 Ark. 337, 174 S. W. 1170. We do not quote from these decisions, but the latter part of the instruction complained of is taken substantially from the latter case.

The latter part of instruction No. 29 given on behalf of appellees, authorizing a recovery by Mr. Connelly of the ''amount he has paid or will have to pay in the future for doctor's bills, medicine bills, hospital bills, and nurse's bills by reason of the injury to his infant son, Harold Connelly, and also the loss of services which he may sustain in the future by reason of the injury to his infant son, Harold Connelly, if any, to be shown by the evidence,'' is objected to on the ground that it includes loss of services by his infant son, whereas there is no evidence that the infant would be able to earn less money by reason of the injury than he would have otherwise. The proof shows that Mr. Connelly had incurred expenses of

approximately $750 and that another operation will be necessary to remove a portion of one of the toes, which will cause additional expense in the future of an unknown amount. It will be seen therefore that very little recovery, if any, was allowed by the jury for loss of services. But, conceding that some portion of the verdict for $1,500 in favor of Mr. Connelly was for loss of earning capacity, we think the boy's condition, lack of development along with his brother, and the nature and extent of his injuries, all of which was before the jury, were sufficient to justify the jury in allowing some recovery on this account.

It is finally urged that the court erred in admitting certain incompetent prejudicial testimony. We have examined the errors assigned in this respect and find them without merit. Conceding them to be erroneous, they were not prejudicial as the facts testified to were established by other witnesses. We find no error, and the judgment is affirmed.