HELEN PARSONS *vs.* DWIGHTSTATE COMPANY.

Hampden.    September 22, 1938. — October 26, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Negligence,* Hotel, Contributory. *Evidence,* Admissions. *Agency,* Scope of authority.

Evidence that the mixing valve of a shower bath provided and maintained by the proprietor of a hotel for the common use of guests was out of order, whereby a guest attempting to manipulate the valve while using the bath was burned by an emission of scalding water and steam, warranted a finding of negligence of the proprietor toward the guest and did not require a ruling that the guest was guilty of contributory negligence.

At the trial of an action by a guest in a hotel for personal injuries caused by a defect in a mixing valve of a shower bath, evidence that after the accident the manager of the hotel, who was in charge of repairs, said that the valves of the shower baths "are always out of order" was inadmissible in the absence of evidence of his authority to make such an admission.

TORT. Writ in the Superior Court dated September 20, 1934.

A verdict for the defendant was ordered by *T. J. Hammond*, J. The plaintiff alleged exceptions.

The case was submitted on briefs.

*R. W. Crowell & T. V. Moriarty*, for the plaintiff.

*I. R. Shaw & J. A. Anderson, Jr.*, for the defendant.

RONAN, J. This is an action of tort brought by the plaintiff, who resided at the defendant's hotel, to recover damages on account of being severely burned by hot water and steam precipitated upon her by a shower bath which, she alleged, had become defective through the negligence of the defendant. The shower was furnished and maintained by the defendant for the use and convenience of those staying at the hotel. The plaintiff excepted to the direction of a verdict for the defendant and to the exclusion of evidence.

There was evidence tending to show these facts: The defendant in 1917 became the owner of certain real estate, a portion of which was used as a hotel. In 1928, the defendant took over the hotel business and has since conducted and maintained such business. The plaintiff had lived in this hotel for about two years prior to her accident, which occurred on October 16, 1933. She at first had occupied a room upon the third floor; but when, in 1932, the defendant arranged for the exclusive occupancy of the fourth floor by women, she was assigned a room upon this floor, which she occupied at the time of the accident. The defendant had provided a shower room containing three individual shower booths and three dressing rooms. In each booth was a shower equipped with a mixing valve, which was operated by turning the handle toward the right from the closed position on the left until a sufficient amount of water at the desired temperature was obtained.

The temperature of the water emitted through the shower was increased by moving the handle to the right and was reduced by turning the handle to the left. The plaintiff had been accustomed to take a shower bath daily, and had always used the middle shower booth. On the evening of October 16, 1933, she went to the shower room. The middle shower had just been used and was not clean. She entered the first booth. She had never been in there before. In attempting to turn on the water, it was necessary for her to use both hands as the handle "stuck and turned hard." She finished her bath, stepped to the right, outside of the flow of water, and reached over with both hands to pull the handle to the left in order to shut off the water. This position brought her arms within the flow of the water. She was unable to move the handle. She again attempted to move the handle to the left. It moved slightly and then a gush of steam followed by a heavy flow of boiling water came from the shower, burning her arms before she could get beyond the flow of water. She put on a dressing gown and notified the elevator boy, who closed the valve by striking the handle with a long stick.

The defendant was bound to exercise reasonable care to maintain this mixing valve in a safe and suitable condition for use by the plaintiff. *Bechtold* v. *Rae,* 231 Mass. 151. *Kitchen* v. *Women's City Club of Boston,* 267 Mass. 229, 231. *Promisel* v. *Hotels Statler Corp.* 286 Mass. 15. The valve was not working properly when the plaintiff first used it before the accident. The defendant's records showed that no new showers had been installed and no repairs had been made upon any of the shower equipment on the fourth floor of the hotel since the defendant became the owner in 1917. The bill of exceptions does not disclose that the valve was introduced in evidence or that the defendant offered any explanation of the accident. The defendant not only owned and maintained this mixing valve but it controlled the flow and the temperature of the water which it furnished to the showers. A shower that would emit steam and a heavy flow of boiling water, when its handle was set for water at a safe temperature, could be found to be a dan-

gerous menace to anyone using the bath. The defendant was obliged to exercise a degree of care commensurate or proportionate to the probable dangers that might result from the lack of such care. *Ogden* v. *Aspinwall*, 220 Mass. 100. *Adams* v. *Dunton*, 284 Mass. 63. The jury not only would be warranted in finding that the valve was defective and dangerous but could reasonably infer that the failure to ascertain its condition and remedy the defect or withdraw this shower booth from use or notify those entitled to use it of the danger, constituted negligence of the defendant. *Callahan* v. *New England Telephone & Telegraph Co.* 216 Mass. 334. *Washburn* v. *R. F. Owens Co.* 252 Mass. 47. *Fone* v. *Elloian*, 297 Mass. 139.

It could not be ruled as matter of law that the defendant had sustained the burden of showing that the plaintiff was guilty of contributory negligence. It was for the jury to say whether she knew and appreciated the danger in attempting to shut off the water. *Cahill* v. *New England Telephone & Telegraph Co.* 193 Mass. 415, and cases cited.

The plaintiff offered to prove a conversation on the day after the accident between one Squires, the manager of the hotel and in charge of repairs, and one Scheufler, whose duty it was to see that all the defendant's real estate was kept in good and safe repair. Scheufler suggested to Squires that he had "better send a plumber up to look at that valve" and Squires replied, in effect, that it was no "sense of sending a plumber up to look at it, we have had plumbers up there all the time and . . . [the valves] are always out of order." Even though both men could be found to be in charge of making repairs upon the defendant's property, neither was shown to be authorized to bind his principal by an admission made subsequently to the accident. *Gilmore* v. *Mittineague Paper Co.* 169 Mass. 471. *McKenna* v. *Gould Wire Cord Co.* 197 Mass. 406. *Boston Food Products Co.* v. *Wilson & Co.* 245 Mass. 550, 561. *Cleary* v. *First National Stores Inc.* 291 Mass. 172. Am. Law Inst. Restatement: Agency, §§ 287, 288.

*Exceptions sustained.*