FORD v. ADAMS.

4-8297                                206 S. W. 2d 970

Opinion delivered December 8, 1947.

*D. H. Crawford, Cooper Land, A. F. Triplett, A. F. House, R. J. Glover* and *Moore, Burrow, Chowning & Hall,* for appellant.

*J. H. Lookadoo, James T. Gooch* and *Curtis L. Ridgway,* for appellee.

SMITH, J. Three separate causes of action were consolidated and tried together, and verdicts were rendered in the three cases totaling $65,000. One of these for $15,000 was in the suit of James H. Adams for the loss of the consortium of his wife, who died as a result of terrible burns suffered by her. Another was returned in the suit of the administrator of Mrs. Adams' estate for $10,000, rendered as compensation for her pain and suffering, and the third, in favor of Adams, for $40,000,

as compensation for pain and suffering, and for the diminution of his earning capacity. It is strongly insisted that each of these verdicts is excessive, but that question is not decided, as all the judgments on these verdicts are reversed for reasons presently to be stated.

The suits arose out of the fire which consumed the Great Northern Hotel in the City of Hot Springs, on the night of September 13, 1946. Adams and his wife registered at the hotel between 12:00 p. m. and 1:00 a. m. that night, and were assigned to Room 352, which was located on the top, or third floor of the hotel. There were 73 bedrooms in the hotel, of which 37 were on the third floor, the others being on the second floor. Another guest had been assigned to Room 350 on the third floor. This room would have adjoined Room 352, but for the intervening room numbered 351.

There is no contention that the hotel was in any manner responsible for the origin of the fire, which started in Room 350. The guest in that room was evidently drunk and continued to smoke after retiring. Apparently he fell into a drunken stupor, and he testified that his bed was on fire when he was awakened. He attempted, without success, to extinguish the fire, which was communicated to the curtains in his room, and he testified that the room went up in flame. He ran out of his room, giving the alarm as he went and he escaped safely by going down a stairway in front of Room 351, leading to the second floor.

Shortly after retiring, Adams discovered that the hotel was afire, and he and his wife were trapped with no means of escape, except by running through the fire which had spread to the stairway. The fire was also between his room and the elevator, and there was no fire escape in the west wing of the building, where his room was located, and the only means of escape without running through the fire, was through the windows of his room, which fronted on Broadway Street. The hotel itself fronted Benton Street and Malvern Avenue, the latter running into Malvern Avenue at an angle of about 45 degrees. There were 13 rooms on this front on the

third floor. There were three wings to this floor of the hotel, all on halls leading into a larger hall, into which the front rooms of the hotel opened. There were three stairways leading from the third floor to the second, one of which was at the east end of the hall, and the fire escape leading from the 3rd floor was located there.

The second, or middle wing of the third floor, in which there were 10 rooms, fronted on a hall, one end of which led to a stairway at the north end of the floor, the other end opened into a large hall into which all the front rooms opened. As has been stated, there was a stairway at the west end of the long hall and another stairway at its east end. The elevator was between these stairways and it had been employed in taking Adams and his wife to their room.

We copy the allegations of the complaint charging negligence. They (Adams and his wife) looked for a fire escape and found they were trapped. . . . The hotel was a three-story building and the only fire escape was on the east side, next to the Post Office. Martha Adams' room was on the third floor and there were no ropes, fire escape, stairway, or any way for the inmates of the hotel to get out. There was no fire escape at all on the west side of the hotel where Martha Adams was staying. The only way she could get out was through the windows of her room. No ropes were provided as required by law. Williamson and Relyea (the owners) rented the building to Ford (the lessee) to be used and operated as a hotel, and by the exercise of ordinary care should have known that no fire escape had been provided. The defendants were jointly and severally negligent to have permitted the only fire escape to be obstructed by a large exhaust fan. They were negligent in having a stairway from the second floor to the street obstructed. They were negligent in failing to keep the building clear and free from inflammable matters. They were negligent in failing to have the building wired for electricity. No attempt was made to prove any of the last alleged acts of negligence and none of them was submitted to the jury. It was however alleged that but for the negligence of the

defendants Martha Adams could have gotten out of the hotel without injury.

These allegations are copied from the complaint filed in the suit of the administrator of Mrs. Adams' estate, and the allegations of the other complaint are substantially to the same effect. But none of them contained the allegation that due care would have required the installation of more than one fire escape, although it is alleged in the complaint filed by Adams for himself, that "all defendants knew there were no fire escapes notwithstanding § 7201, Pope's Digest." This section reads as follows:

"It shall be the duty of every person operating any hotel, or inn containing seven rooms or more, two stories high or more, within the State of Arkansas to have a rope not less than one-half inch in diameter and knotted not more than fifteen inches apart, and of sufficient strength to hold up five hundred pounds and long enough to extend within twenty-four inches of the ground. Said rope to be securely attached to the window sill, or wall of one window in each room about the first story of said building to be occupied by guest. Said rope to be kept in full view at all times. This section not to apply to hotels equipped with iron fire escapes, and any proprietor, lessee or manager of any hotel, or inn refusing to comply with the provisions of this act shall be guilty of a misdemeanor, and, on conviction, such proprietor, lessee, manager, agent or clerk in charge of said hotel or inn, whenever any violation of this act shall occur shall be fined not less than ten dollars nor more than fifty dollars, or imprisonment for a term not exceeding thirty days, or by such fine and imprisonment."

One instruction told the jury upon what findings they might hold appellants negligent, which of course means liable, and a second instruction told the jury to find for plaintiff if it were found that defendants were negligent as defined in the other instructions.

The chief insistence for the affirmance of the judgment is that ropes were not supplied in the various rooms

as § 7201, Pope's Digest, requires, if fire escapes were not provided. The complaint did not allege that it was negligence to have provided only one fire escape from the third floor. Had that allegation been made, issue could have been joined as to whether ordinary care would have required more than one fire escape in view of the facilities furnished for that purpose, to-wit, three stairways, one elevator and one fire escape leading from the third floor. On the contrary, without that allegation, the jury was directed to find whether that failure was negligence.

The instruction number one in effect directed a verdict for the plaintiff, as it authorized the finding of negligence "if suitable and workable methods were not furnished for the exit of persons renting rooms on the west side of the third floor of the building, in case of fire." Many objections were offered to this instruction. It permits the jury to view this fire and the injuries resulting from it retrospectively and not prospectively. If this were the proper or permissible test of negligence there would be liability for nearly all injuries as most of them could have been averted if something had not been done which was done, or something was left undone which might have been done. It is a trite saying that hind sights are better than fore sights. Inasmuch as the owners and the lessee of the hotel were not insurers of the safety of their guests, liability must be determined by the answer to the question "Did they furnish the facilities for the safety of their guests which ordinary care required and reasonable prudence would have suggested?" If they did not they were negligent. If they did they were not negligent, although it may now appear that some "suitable and workable method" might have been employed which was not employed.

It is therefore insisted that the instruction is erroneous in that it in effect directs a verdict for the plaintiff inasmuch as it now appears that precautions were not taken, which if taken would have offered a means of egress, whereas, it is urged that all the precautions were

taken which ordinary care and reasonable prudence would have suggested.

Had it been alleged that more than one fire escape should have been provided, that issue could have been developed, but it was submitted to the jury in the instructions, without allegations upon which to base it.

It is admitted that no one of the rooms in the hotel had been provided with ropes, which failure was alleged as negligence and it is now insisted that § 7201, Pope's Digest, was thereby violated and that this violation is sufficient to sustain the charge of negligence. Now this statute does not read that the failure to provide ropes in the absence of fire escapes shall constitute negligence. This absence of ropes in each room, would be evidence of negligence, but the statute does not make this failure negligence *per se*. Our decisions are to the effect that the violation of a statute is evidence, but is not conclusive of that question. *Bain* v. *Ft. Smith Light & Traction Co.*, 116 Ark. 125, 172 S. W. 843, L. R. A. 1915D, 1021; *Pankey* v. *L. R. Ry. & Electric Co.*, 117 Ark. 337, 174 S. W. 1170; *Nichols* v. *State,* 187 Ark. 999, 63 S. W. 2d 655.

The statute quoted does not require that all hotels two stories high or higher, containing seven rooms or more, shall be provided with ropes. In fact, this requirement is not imposed at all on hotels equipped with iron fire escapes. But counsel argues that lacking ropes the Great Northern Hotel should have had more than one fire escape, but if this is true, it is true as a matter of fact, and not as a matter of law. Counsel says the law imposed the requirement that more than one fire escape be installed, lacking ropes in the hotel rooms, and that the use of the plural words ''fire escapes'' requires that construction of the statute. But the use of the plural words appears in the portion of the section reading, ''This section not to apply to hotels equipped with iron fire escapes.'' Correct grammar required the use of these plural words, as it was not to be assumed that one fire escape would serve more than one hotel. A violator of this statute is subject to a fine, but the statute does not

undertake to impose civil liability, although its violation is evidence of negligence.

The question which should control, and which should have been submitted to the jury, is what safeguards should have been provided whether ropes or fire escapes, or both. The size of the hotel and the probable number, or the largest number of guests anticipated or invited to secure accommodations at any one time should be taken into account. This would properly have been a question for the jury had the pleadings raised the issue that one fire escape did not meet the requirements of the statute under the structural arrangements of the hotel. One fire escape might suffice for some hotels two stories high, having seven rooms, but be wholly inadequate for larger ones not equipped with ropes. An owner or operator of a hotel might be guilty of negligence if there were no statute on the subject, and there would be negligence if the precautions for the protection of guests had not been taken which ordinary care suggested and required. So that in the last analysis the question is was there negligence, and as has been said this is a question to be viewed prospectively and not retrospectively.

Separate briefs have been filed for the owners of the hotel and the lessee thereof, and in the briefs for the owners it is insisted that the duty to furnish ropes was imposed upon the lessee and not upon them. This was a matter for private contract. If the lessee undertook to operate the hotel without adequate fire escapes he should have required the owners to furnish ropes, but if the lessee did not impose this requirement upon the owners, he should have himself furnished them.

But not so with the fire escapes. The lessee was operating the hotel under a month to month lease, and it appears unreasonable to impose upon him the duty of providing the iron fire escapes. If there is liability in this case it arises out of the fact that due care was not used in equipping the building with adequate fire escapes and, lacking these, ropes, in each room. We conclude therefore that if there is liability both the owners and the lessee may be liable.

Cases are cited distinguishing the duty of operators and lessees of hotels from that of owners and operators of places of public amusement, where a large number of people may be expected to assemble and disperse in a short period of time, but we do not review them as we think no distinction exists between hotels and places of public amusement, in the matter of precautions to be taken for the protection of persons invited to enjoy the facilities furnished.

We approve the holding of the Supreme Court of Colorado in the case of *Colorado Mort. & Inv. Co.* v. *Giocomini,* 55 Col. 540, 136 Pac. 1039, L. R. A. 1915B, 365, refusing to recognize a distinction as to the duty owing by the operator of public places generally from that of the owners and operators of hotels. The public has in each or in both cases only such protection as may be provided for their safety. In a note of the annotator to the case of *Webel* v. *Yale University,* 123 A. L. R. 878, it is said, ''Except under special circumstances, the cases are practically uniform in applying the same rule of liability against the owners of hotel premises as is applied against the owners of amusement places.''

We interpret the instructions given as making the appellants insurers of the safety of their guests inasmuch as it now appears that precautions might have been taken, which if taken would have enabled all guests to escape from the burning building, whereas the question which should have been submitted to the jury is, as has been stated, whether all the precautions had been taken which reasonable prudence and ordinary care would have suggested, these being the stairways leading from the third to the second floor, an elevator and one fire escape. The jury might have found that these facilities for escape did not meet the requirements of due care, but that question should have been submitted without permitting the jury to impose precautions which might have transcended ordinary care. *Baker* v. *Dallas Hotel Co.,* 73 Fed. 2d, 825; *Louisville Tr. Co.* v. *Morgan,* 180 Ky. 609, 203 S. W. 555, 7 A. L. R. 396; *West* v. *Spratling,* 204 Ala. 478, 86 So. 32; *Thomas* v. *Wollcott,* 180 N. Y. Supplement 798.

For the error indicated the judgment is reversed and the cause remanded for new trial.

ROBINS, J., dissents.

McFADDIN and MILLWEE, JJ., dissent in part.

ROBINS, J., dissenting. I respectfully dissent. In my opinion the evidence in the case presented a fact question for the jury as to whether the appellants—both the owners and lessee of this hotel—had reasonably complied with the requirements of the statute (§ 7201, Pope's Digest) and whether any failure by them so to comply was negligence causing or contributing to the injuries complained of by appellees. I do not find any error in the lower court's instructions; and, in my opinion, the jury's finding of liability against appellants is binding on us. Since the cause is being remanded for new trial there is no necessity to discuss the question of excessiveness of the amount of the verdict.

ED. F. McFADDIN, Justice, dissenting. I respectfully dissent from the majority in this case; and in the following numbered points, I itemize my dissent.

I. *The Owners of the Building.* These were the appellants, C. S. Williamson and Mary Frances Relyea. As regards these owners of the building, the case was submitted to the jury under an instruction (plaintiff's instruction No. 2) which permitted the jury to find the owners to have been guilty of negligence, if the jury found that the owners failed to supply ropes in the guest rooms under the provisions of § 7201, Pope's Digest. I think it was error on the part of the trial court to measure the liability of the owners of the building by the said § 7201, Pope's Digest. This section comes to us from Act 242 of 1913; and I think that this section applies to operators or lessees of a hotel, and *not to the owner of a hotel building who leases the premises to another.*

A brief study of Act 242 of 1913 will clarify this point:

Section 1 of Act 242 is now § 7198, Pope's Digest; and requires that clean and fresh bed linens be furnished each room in the hotel, and says ''and any *proprietor,*

lessee, manager or agent of any inn or hotel'' who fails to furnish such fresh bed linen shall be guilty of a misdemeanor.

Section 2 of Act 242 is now § 7199, Pope's Digest, and makes it the duty of every hotel or innkeeper to have the windows screened; ''and any *proprietor,* lessee, manager or agent of an inn or hotel'' who fails to have the windows screened shall be guilty of a misdemeanor.

Section 3 of Act 242 is now § 7200, Pope's Digest, and requires that all closets and toilets be kept clean and ''any keeper, manager, agent or person in charge of the operation and conduct of any inn or hotel'' who fails to keep the closets and toilets clean shall be guilty of a misdemeanor.

Section 4 of the Act 242 is now § 7201, Pope's Digest, and makes it the duty of every person ''operating any hotel or inn containing seven rooms or more two stories high or more'' to have a certain rope of described length in each room, ''and any *proprietor,* lessee or manager of any hotel or inn'' who fails to have such rope in each room (in the absence of proper fire escapes) shall be guilty of a misdemeanor. This § 7201, Pope's Digest, is the section commonly referred to as the ''rope section.''

It will be observed that the words ''proprietor, lessee, or manager'' occur in §§ 1, 2 and 4 of the said Act 242. Now, if the owner of the building is to be considered a *proprietor* under § 7201, Pope's Digest (the rope section), then such owner would likewise have to be considered a *proprietor* under § 7198, Pope's Digest (which refers to clean linens on the beds), and such construction would lead to the absurd result that the owner of a building leasing the same to another for hotel purposes would be expected to provide change of linens in each room, or else be guilty of a misdemeanor. Furthermore, if the owner of a building should be considered as the *operator* of the hotel under the rope section, then such owner would have to be considered ''in charge of the operation'' under § 7200, Pope's Digest, and thereby be guilty of a misdemeanor if any toilet or closet

should be unclean. This brief review of Act 242 of 1913 shows that the Legislature did not intend that the owner of a building would be liable as the proprietor or operator of the hotel under the rope section.

Since this case was submitted to the jury under an instruction which treated the owners of the building as though they were the proprietors or operators of the hotel, I think the case should be reversed as to the owners, Williamson and Relyea. The question of the liability of the owners of the building should have been submitted to the jury on the "public place" theory. The lessor of premises used for a "public or semi-public purpose," such as a public hall or hotel, has been held liable to persons rightfully there, for defects existing therein at the time of the demise. It is said that there is a duty upon all such persons to see that the premises are, at the time of the demise, safe for use by the public. Some authorities on this "public place theory" are: 32 Am. Juris. 533, "Landlord and Tenant," § 667, and cases and annotations there cited; American Law Institute's Restatement of the Law, "Torts," § 359; *Colorado M. & I. Co.* v. *Giacomini,* 55 Colo. 540, 136 Pac. 1039, L. R. A. 1915B, 364 (an annotation following case in L. R. A.); annotations in 123 A. L. R. 878, "Landlord's Liability to Business Patron."

II. *The Operator of the Hotel.* I find no error in the instructions submitting to the jury the question of the liability of the defendant, Ford, who was actually operating the hotel. The majority says that the instruction concerning Ford's liability was "retrospective rather than prospective," and was in effect a peremptory instruction. I do not so consider the instruction. It is true that the instruction No. 2 was long, but it was not erroneous. I copy the concluding portion of the instruction:

"You are instructed that if . . . you further find that the defendants knew, or by the exercise of ordinary care should have known, that there were no fire escapes on the west side of the building and that there were no ropes for plaintiffs or anyone else using rooms

on the west side of the 3rd floor to use in case of fire, provided you find that there were no fire escapes and no ropes in the rooms; and you find by a preponderance of the evidence that all of the defendants knew, or by the exercise of ordinary care should have known that just such injuries could occur as did occur to plaintiff and plaintiff's intestate, provided you find they were injured, if suitable and workable methods were not furnished for the exit of persons renting rooms on the west side of the 3rd floor of this building in case of fire; and you further find by a preponderance of the evidence that all of the defendants knew, or by the exercise of ordinary care should have known, that in case of fire preventing the use of the stairway and elevator that the only possible exit from rooms on the west side of the 3rd floor would be by jumping out of the window, as plaintiff and plaintiff's intestate did, provided you find that plaintiff and plaintiff's intestate did jump from said window of the third floor of the hotel; and you further find that plaintiff and plaintiff's intestate were in the exercise of all of the care and precaution of any reasonable prudent person when they did jump from said window, and that plaintiff and plaintiff's intestate received burns and also were injured as a result of jumping from the window; you may consider the lack of having fire escapes, ropes or any other device for plaintiff and plaintiff's intestate to use, provided you find that nothing was furnished for their use, in passing upon whether or not defendants were guilty of negligence.''

This instruction to the jury was, that, in considering the question of Ford's negligence, the jury could consider whether Ford, by the exercise of ordinary care, should have known that there was no fire escape on the west side of the building and no rope for the plaintiffs to use, and the jury could also consider whether Ford, by the exercise of ordinary care, should have known that, in case of fire, these rooms on the west side might be cut off from all exits in the building; and the jury could also consider whether Mr. and Mrs. Adams exercised reasonable care in doing what they did after the fire broke out and all exits had been blocked. The in-

struction told the jury that it might consider these matters "in passing upon whether or not the defendants were guilty of negligence." As to Ford, this instruction was as "prospective" as could be, and I find no error therein.

III. *Amount of the Verdicts.* The verdicts in this case are large, but there is no necessity for me to consider this point, since the majority has reversed and remanded the entire case.

For the reasons stated, I most respectfully dissent; and I am authorized to state that Mr. Justice MILLWEE joins me in this dissent.