Pauline EARLY, Plaintiff,

v.

JOHN A. COOPER COMPANY, successor to Cherokee Village Development Company, Inc., Defendant.

No. F–68–C–18.

United States District Court
W. D. Arkansas,
Fayetteville Division.

Oct. 15, 1969.

Pearce, Robinson, & McCord, Fort Smith, Ark., for plaintiff.

Crouch, Blair, Cypert & Waters, Springdale, Ark., Clayton Little, Bentonville, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

Plaintiff seeks to recover for personal injuries and damages allegedly sustained by her on July 18, 1966, when she fell in a bathtub provided for her use by the defendant corporation. Jurisdiction is established by diversity of citizenship and the amount in controversy.

Plaintiff alleges that the defendant was negligent in failing to furnish instructions on the proper and safe way to use a bathmat with suction cups, when it knew or should have known that such a bathmat is dangerous and hazardous if not correctly used.

Defendant denies that it was negligent in any manner and specifically pleads the defenses of contributory negligence and assumption of risk on the part of the plaintiff.

The following shall constitute the findings of fact and conclusions of law of the court, as contemplated by Rule 52(a) of the Federal Rules of Civil Procedure.

The John A. Cooper Company owns and operates, among other things, Bella Vista Village, a massive land development and resort area near Bentonville, Arkansas. As part of an advertising scheme designed to lure potential purchasers of home sites into the area, the company offers free housing and the use of its recreational facilities to selected individuals, usually for a period of two days. Plaintiff's daughter applied for such a "vacation" as a result of advertising conducted by defendant at a fair in Oklahoma City, Oklahoma, and reservations at Bella Vista Village were in fact made in her name. Plaintiff, however, arranged by means of a telephone call to defendant to accompany her daughter, and it is quite clear that plaintiff was an invited guest of defendant. When plaintiff and her party arrived at Bella Vista Village, they were provided a fully equipped, two-bedroom house trailer for their use and occupancy. Plaintiff arose the next morning and entered the bathroom for the purpose of taking a showerbath. No one in her party had made prior use of the shower. The bathroom in question is quite similar to those normally found in hotel or motel accommodations. Specifically, the bathing facilities consisted of a porcelain or enamel bathtub equipped with a shower nozzle and enclosed by a two-part plastic or fiberglass door which slides inside a metal frame. The bathmat supplied by defendant was a recently purchased standard rubber mat measuring 14″ x 22½″ with rows of suction cups alternated with rows of holes designed to release air which might otherwise be trapped under the mat. The top side of the mat was textured with small rubber ridges. On the morning in question, plaintiff found the mat draped over the top of the metal bathtub door frame. She alleges that she turned on the shower water, placed the mat in the bathtub with the side containing the suction cups down, and, with her back to the shower nozzle, placed her right foot and most of her weight on the bathmat. While astride the edge of the tub in this manner, plaintiff and the bathmat began slipping. Unfortunately, her left leg, which remained outside the tub, was caught at the knee on the angle formed by the vertical, half-open sliding door and the horizontal portion of the door frame, resulting in injury to her left knee.

There is a paucity of reported cases involving bathtub injuries. It would in fact appear that there is not a single reported slip-and-fall case involving the actual use of a bathmat. The general rule is that an innkeeper must exercise such care in the maintenance of bathrooms and the chattels or fixtures therein that guests can use them in an ordinary manner without danger. Black v. Heininger (Fla.App.1964), 163 So.2d 3; Coyle v. Beryl's Motor Hotel (Ohio App.1961), 171 N.E.2d 355; Lincoln Operating Co. v. Gillis (1953) 232 Ind. 551, 114 N.E.2d 873; Hunter v. Hotel Sylvania Co. (1943), 153 Pa.Super. 591, 34 A.2d 816; Doherty v. Arcade Hotel

(1943), 170 Or. 374, 134 P.2d 118; Cummings v. Allied Hotel Corp. (Mo. App.1940), 144 S.W.2d 177; Parsons v. Dwight State Co. (1938), 301 Mass. 324, 17 N.E.2d 197, 118 A.L.R. 1099. Implicit therein is a duty to make careful and frequent inspections of the facilities and to correct or warn of conditions that may foreseeably cause injury. Hillinghorst v. Heart of Atlanta Motel, Inc. (1961), 104 Ga.App. 731, 122 S.E.2d 751; Miller v. Schull (Fla.1950), 48 So. 2d 521; Wallace v. Speier (1943) 60 Cal. App.2d 387, 140 P.2d 900; Adams v. Dow Hotel (1938), 25 Cal.App.2d 51, 76 P.2d 210.

An occasional plaintiff has alleged negligence on the part of an innkeeper for *failing* to provide a bathmat, but in each case recovery has been denied, either on a finding of assumption of risk or that there is simply no duty owed where the condition is open and obvious to anyone using ordinary diligence. Dempsey v. Alamo Hotels, Inc. (1966), 76 N.M. 712, 418 P.2d 58; LaBart v. Hotel Vendome Corp. (D.Mass.1963), 213 F.Supp. 958; Coyle v. Beryl's Motor Hotel, supra.

Plaintiff understandably does not rely upon the decisions cited and instead urges that the court apply the Restatement of the Law of Torts 2d, § 388, to the facts, whereby the defendant would be viewed as the supplier of a dangerous chattel. This rule of liability is set forth in the following language:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Paraphrasing the quoted section, plaintiff would then contend that the bathmat in question is so dangerous when used in an ordinary manner that defendant had a duty to warn plaintiff of its dangerous condition. Specifically, plaintiff urges that defendant was negligent in failing to provide her with an instruction sheet, which was enclosed by the manufacturer in the original package, regarding the use of the bathmat. It is conceded that plaintiff received no instructions, but defendant also denies receiving any instructions when it purchased the mat. An examination of the instructions normally provided with bathmats sold by the same manufacturer reveals that the manner in which plaintiff used the subject bathmat differs in one material respect from the recommended procedure. Plaintiff turned on the shower water *before* placing the bathmat in the tub, whereas the manufacturer advises that the mat be placed in the tub *before* turning on the water. The difference is significant, because persons of ordinary intelligence know as a matter of common experience that suction cups function far more effectively when compressed on a relatively dry surface. Any person who has ever taken a bath is aware that air becomes trapped under almost any surface that is placed on top of water.[1] A person of ordinary

---

[1] Plaintiff introduced the deposition of Dr. David M. Scruggs, Associate Professor of Mechanical Engineering at the University of Arkansas. During the course of the deposition, two experiments designed to test suction were conducted with a bathmat without alterating rows of holes in the rubber. One such test was favorable to plaintiff and the other to defendant. Defendant's objection to the answers to hypothetical questions dealing with the absence of such holes

prudence would not only place the mat in a dry or empty tub, but would thereafter also attempt to shove or otherwise move the mat before committing total body weight to it.

Plaintiff claims, however, that she possesses absolutely no prior experience with bathmats. Her discovery deposition, introduced for the purpose of impeachment, leads the court to believe otherwise. Plaintiff was forty-two years old at the time of the accident, and had traveled widely and often with her parents and with three husbands. Although she denies frequent patronage of hotels and motels, she admits that she has occasionally stayed in such establishments. It would in fact be virtually impossible for one even half the age of plaintiff to have entirely avoided the use of public accommodations. However, even if plaintiff had never visited a hotel or motel, the contention that a woman of her experience had reached a mature age without coming in contact with a bathmat would be astounding if not incredible.

In addition, it is uncontradicted that each of the 199 housing units provided to guests of the defendant is equipped with an identical bathmat. Of the many thousands of people who have used these accommodations and, presumably, the bathmats provided therein, plaintiff is the only person to experience difficulty. Moreover, plaintiff at trial specifically abandoned her contention that the subject bathmat was defective.

The court is compelled to hold that persons of ordinary intelligence and common experience are familiar with the ordinary manner in which bathmats are used and that the bathmat supplied to plaintiff by defendant was not dangerous when used in an ordinary manner. Defendant was, therefore, under no duty to warn or instruct as to its proper use. While a hotel guest is entirely warranted in expecting his innkeeper to exercise reasonable care to furnish facilities for the safety of guests, Ford v. Adams (1947), 212 Ark. 458, 206 S.W.2d 970, 207 S.W.2d 311, a proprietor has a corresponding right to assume that his invitee will perceive that which should be obvious to him upon the ordinary use of his own intelligence and experience. Miller v. Schull, supra. Even assuming, arguendo, that plaintiff had no prior knowledge of bathmats, the proprietor of a public place is not an insurer of his guests, and is not required to anticipate the rare or occasional plaintiff who is totally unfamiliar with simple household chattels.

No negligence can be attributed to defendant. Any injury sustained by plaintiff as a result of her fall[2] was proximately caused by her own negligence in either failing to use the bathmat supplied or in using it in an unusual and improper manner.

Therefore, judgment is being entered today dismissing the complaint of plaintiff and requiring the parties to pay their own costs.

is sustained. Overall, the deposition was favorable to defendant's case. The foundation for its introduction is, however, somewhat weak because of the difference in design between the mat tested and the one used by plaintiff. The court allowed portions of the deposition to be introduced primarily because the case was tried without a jury.

2. Evidence was introduced at the trial bearing on the question whether plaintiff's injuries were totally or partially caused by an automobile accident occurring on March 19, 1967, in which plaintiff was involved. The conclusion of the court on the issue of negligence makes it unnecessary to consider the evidence as to the extent and source of the injuries suffered and damages sustained.