Pauline **EARLY**, Appellant,

v.

**JOHN A. COOPER COMPANY**, Successor to Cherokee Village Development Company, Inc., Appellee.

No. 20134.

United States Court of Appeals, Eighth Circuit.

Dec. 8, 1970.

Pearce, Robinson, McCord & Maurras, Fort Smith, Ark., for appellant.

Crouch, Blair, Cypert & Waters, Springdale, Ark., for appellee.

Before MATTHES, Chief Judge, HEANEY, Circuit Judge, and VAN PELT, Senior District Judge.

VAN PELT, Senior District Judge.

This is a negligence case. Plaintiff seeks to recover for injuries sustained from a fall in a bath tub on July 18, 1966, while an invited guest of defendant. A jury was waived and trial was had to the court. Upon dismissal of plaintiff's claims,[1] a motion for new trial was filed with the additional request for permission to request a jury. This was denied and this appeal follows. We affirm.

The facts are not in dispute. Plaintiff and her party were invited guests in one of defendant's guest facilities at Bella Vista Village, a massive land development and resort area near Bentonville, Arkansas.[2] The day following the party's arrival, plaintiff arose to take a shower bath.[3] She found a bathmat draped over the side of the metal bathtub door frame. The mat was manufactured by Rubbermaid and had rows of suction cups alternated with rows of holes designed to release air which might otherwise be trapped under the mat. The top side of the mat was textured with small rubber edges.[4]

Plaintiff did not look for instructions as to placing the mat in the tub. None were posted, however. Instructions furnished by Rubbermaid with the mat were in evidence. They are on a separate printed sheet. They provide among other things that the mat be placed in the tub before running the bath water and that each end of the mat be pressed down.

Printed on the mat on the suction cup side were the words "This side down."

---

1. The district court's opinion is reported at 304 F.Supp. 906 (W.D.Ark.1969).

2. Plaintiff's daughter had applied for a "vacation" offered by defendant company. These vacations were part of an advertising scheme designed to attract possible purchasers of home sites into the area. Free housing and the use of its recreational facilities were offered to the selected individuals. Reservations for this "vacation" were made in the daughter's name. However, plaintiff arranged with defendant by telephone to accompany her daughter. The lower court correctly found that plaintiff was an invited guest of defendant.

3. The bathroom in question is quite similar to those normally found in hotel or motel accommodations. Specifically, it was a part of a mobile home unit. The bath facility consisted of a white porcelain tub equipped with a shower nozzle and enclosed by a two-part plastic or fiberglass sliding door fitted inside an aluminum frame.

4. Plaintiff relied specifically in the lower court upon Restatement (Second) of Torts § 388 (1965):

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Plaintiff testified that she read these instructions and "I put 'This side down' in the tub. I did just what the instructions said." She first turned on the water. The water was running at the time she laid the mat into the tub.

With her back to the shower nozzle she stepped over into the tub with her right foot, with most of her weight on the mat. When she put her full weight onto the bathmat she took her weight off her left foot. Her left leg at the time was over the edge of the bathtub and "when I put my full weight on my right foot I shot down the tub."

"Q. You say you shot down the tub. Did the bath mat move?

A. The bath mat carried me down the tub.

Q. Did this happen quickly or slowly?

A. Very quickly."

When this happened she said her left leg was caught on the tub in the aluminum track and was pulled out of joint at the knee and was cut and scraped underneath and over the top.

She screamed and her husband who was about two steps away stepped into the bathroom and caught her, preventing her falling into the tub.

Plaintiff was forty-two years old at the time of the fall. She had been married three times and had traveled extensively. She testified she possessed no prior experience with bathmats [5] although she believed she knew how to use them properly.

Plaintiff called as an expert an associate professor who is a mechanical engineer with a Ph.D. in engineering materials, and who examined a rubber mat labelled model number $\frac{CDO-0450.}{9}$

The bathmat used by plaintiff bears model number DO/0450. The expert testified that the mat operates through action of the suction cups; that when he placed the mat in a tub and pressed down on the suction cups it seemed to have excellent holding power; when placed in water without any force downward it rather easily slips along the surface. If directions are followed the mat appears safe.[6]

During cross-examination an experiment with a mat in water was conducted and the attorney pushing on the mat in water with his hand was unable to scoot the mat laterally or sideways. The witness stated if none of the cups were in operation, it would slip almost as if it were greased.

Defendant's testimony was that mats very similar to the Bella Vista mats are used in other commercial hotels and motels; that no other complaints as to use or falling have been made to Bella Vista. Another witness testified to selling Rubbermaid mats at retail. He sold to defendant mats similar to the mat here involved. He testified that he had never seen printed instructions as to how to use them. On cross-examination he was then handed a cellophane sealed package of the kind his store was selling and on opening it was shown to contain a mat and printed instructions as to use.

Another witness testified that on getting into a shower she would step in with the left foot and that the Bella Vista people have had no other bathmat accidents.

5. The trial court discredited this testimony, based upon plaintiff's discovery deposition, and concluded: "[T]he contention that a woman of her experience had reached a mature age without coming in contact with a bathmat would be astounding if not incredible." 304 F.Supp. at 909.

6. The oral deposition of Dr. David M. Scruggs accurately describes the physical principles applicable in the operation of suction cups. Essentially those principles demonstrate that a suction cup is engaged by forcing the hollow side against a flat surface, forcing the air past the air seal formed by the rim of the cup and thereby creating a partial vacuum in the hollow side of the cup when the force is released and the cup springs back to its original shape. The result is that atmospheric pressure against the outside of the cup causes it to adhere to the surface.

Mrs. Early's prior deposition was introduced. It stated she put the mat in the tub without really looking at it and was confident she knew how to use it. She didn't remember any writing on the back of it. A statement she made about how she would use her bathmat at home she said was a misstatement.

The trial court found the bathmat not a dangerous chattel and further found:

"An examination of the instructions normally provided with bathmats sold by the same manufacturer reveals that the manner in which plaintiff used the subject bathmat differs in one material respect from the recommended procedure. Plaintiff turned on the shower water *before* placing the bathmat in the tub, whereas the manufacturer advises that the mat be placed in the tub *before* turning on the water. The difference is significant, because persons of ordinary intelligence know as a matter of common experience that suction cups function far more effectively when compressed on a relatively dry surface. Any person who has ever taken a bath is aware that air becomes trapped under almost any surface that is placed on top of water. A person of ordinary prudence would not only place the mat in a dry or empty tub, but would thereafter also attempt to shove or otherwise move the mat before committing total body weight to it.

"Plaintiff claims, however, that she possesses absolutely no prior experience with bathmats. Her discovery deposition, introduced for the purpose of impeachment, leads the court to believe otherwise. Plaintiff was forty-two years old at the time of the accident, and had traveled widely and often with her parents and with three husbands. Although she denies frequent patronage of hotels and motels, she admits that she has occasionally stayed in such establishments. It would in fact be virtually impossible for one even half the age of plaintiff to have entirely avoided the use of public accommodations. However, even if plaintiff had never visited a hotel or motel, the contention that a woman of her experience had reached a mature age without coming in contact with a bathmat would be astounding if not incredible.

\* \* \* \* \* \*

"The court is compelled to hold that persons of ordinary intelligence and common experience are familiar with the ordinary manner in which bathmats are used and that the bathmat supplied to plaintiff by defendant was not dangerous when used in an ordinary manner. Defendant was, therefore, under no duty to warn or instruct as to its proper use. \* \* \*

No negligence can be attributed to defendant. Any injury sustained by plaintiff as a result of her fall was proximately caused by her own negligence in either failing to use the bathmat supplied or in using it in an unusual and improper manner." (footnotes omitted)

This appeal is based upon the claim that the trial court's decision is clearly erroneous.[7]

7. Plaintiff asserts, in addition, that the appellate court may reverse "where the court misapprehended the effect of the evidence," relying on Western Cottonoil Co. v. Hodges, 218 F.2d 158 (5 Cir. 1954), rehearing denied and modified per curiam, 218 F.2d 163 (5 Cir. 1955). This proposition is listed second in a list of three conditions upon which that court held it could reverse. It is evident that Western was not decided on this particular point. It is also clear that the conjunctive "and" joins the proposition relied upon by plaintiff and the third condition "if, though there is evidence which if credible would be substantial, the force and effect of the testimony considered as a whole convinces that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case." It seems apparent that the third condition must be found in conjunction with either of the first two. In any event, this court has not adopted the specific rule relied upon by plaintiff but rather has consistently

Rule 52(a), Fed.R.Civ.P. sets forth the standard by which the district court's ruling is to be measured. It says in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

This court has frequently given effect to this rule. Rosenberg v. United States, 422 F.2d 341 (8th Cir. 1970); Humble Oil & Refining Co. v. American Oil Co., 405 F.2d 803 (8th Cir. 1969), cert. denied, 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969); Imperial Cas. & Indemnity Co. v. Carolina Cas. Ins. Co., 402 F.2d 41 (8th Cir. 1968); Whitson v. Yaffe Iron and Metal Corp., 385 F.2d 168 (8th Cir. 1967).

"A finding is clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Humble Oil & Refining Co. v. American Oil Co., 405 F. 2d 803, 814 (8th Cir. 1969) (citations omitted)

*See also,* S. S. Silberblatt, Inc. v. Seaboard Sur. Co., 417 F.2d 1043 (8th Cir. 1969).

It is elementary that this standard applies in cases tried to the court without a jury. Whitson v. Yaffe Iron and Metal Corp., *supra.*

It is the responsibility of the trial court in a non-jury case to pass upon the credibility of the witnesses as well as to draw reasonable inferences from undisputed evidence. Saturn Oil & Gas Co. v. Northern Nat. Gas Co., 359 F.2d 297 (8th Cir. 1966).

In fact, in a case tried to the court, its findings are presumptively correct and appellee is entitled to all the benefits of reasonable inferences from the testimony, this court taking that view of the evidence favorable to appellee. Barber-

Greene v. Bruning Company, 357 F.2d 31 (8th Cir. 1966).

Likewise, in a case arising from Arkansas, we have stated that the determination by the local trial judge of the local law of his state, will not be overturned absent firm conviction that it is erroneous. See Hogue v. Pellerin Laundry Machinery Sales Co., 353 F.2d 772 (8th Cir. 1965).

Plaintiff claims that the trial court misapprehended the effect of the evidence presented. This assertion is based upon the following sentence contained in the trial court's above quoted opinion:

"The difference is significant, because persons of ordinary intelligence know as a matter of common experience that suction cups function far more effectively when compressed on a relatively dry surface." 304 F.Supp. at 908.

Plaintiff asserts that this statement is in direct contradiction to the applicable physical principles as well as the directions of Rubbermaid which accompanied the mat.

▇ Plaintiff's reliance upon the one sentence quoted above is misplaced. When considered in its full context, it is evident that the court's emphasis was on the fact that plaintiff turned on the showerbath water *before* she placed the bathmat into the tub, and that any article placed on top of water is going to trap a certain amount of air under that article. The sentence immediately preceding the one complained of indicates further that the court did not disregard the instructions given by Rubbermaid. In fact, the court compares the procedure actually taken by plaintiff and that recommended in the instructions. We reject plaintiff's assertion that the trial court's finding in this regard is "clearly erroneous."

Plaintiff also claims that the trial court erred in concluding that the bath-

adhered to the rule as set out in Rosenberg v. United States, *infra*; Humble Oil and Refining Co. v. American Oil Co.,

*infra*; Imperial Cas. & Indem. Co. v. Carolina Cas. Ins. Co., *infra*.

mat was a simple household chattel, and that plaintiff's injury resulted from her own negligence. Plaintiff's own testimony disclosed that she committed her total weight to the mat before testing it to insure its adhesion.

Plaintiff also claims that the defendant failed to furnish instructions as to the proper and safe way to use a bathmat with suction cups. As above indicated, plaintiff did not look for instructions and hence even if instructions had been posted, which they were not, she would not have read them. The district court held that persons of ordinary intelligence and common experience are familiar with the ordinary manner in which bathmats are used. He concluded that the bathmat supplied by the defendant was not dangerous when used in an ordinary manner and that there was therefore no duty on the defendant to warn or instruct as to its proper use. He further concluded that any injuries sustained by the plaintiff were proximately caused by her own negligence.

We believe the court could so find under the evidence and having so found, we cannot under the evidence say that the findings are clearly erroneous.

It is significant that the trial judge believed plaintiff's testimony had been impeached by her deposition. He saw plaintiff and observed her testify. His right to disregard or disbelieve her testimony is the same as that of a jury. It is not for us to say on the record before us that his conclusion was clearly erroneous. We are satisfied upon review that sufficient evidence and inferences therefrom exist to support the trial judge's conclusions that plaintiff's injury was proximately caused by her own negligence and that the bathmat is a simple household chattel.

On the basis of the evidence presented and the findings made by the district court, we do not have a definite and firm conviction that the trial court committed a mistake in dismissing plaintiff's complaint. The order dismissing plaintiff's complaint is affirmed.